[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 527.]

THE STATE EX REL. REA ET AL. *v*. OHIO DEPARTMENT OF EDUCATION ET AL.

[Cite as *State ex rel. Rea v. Ohio Dept. of Edn.*, 1998-Ohio-334.]

*Public records—R.C. 149.43—Previously administered examinations of the Twelfth Grade Ohio Proficiency Test and the Ohio Competency Analysis Profile are public records subject to disclosure under Ohio's open records law.*

(No. 96-1997—Submitted November 4, 1997—Decided April 29, 1998.)

IN MANDAMUS.

———————

{¶ 1} Plaintiffs-relators, Stephen and Hollie Rea, father and daughter, brought this mandamus action to compel officials at the Ohio Department of Education ("ODE") and the Ohio State University-Vocational Instructional Materials Laboratory ("OSU") to release requested portions of both the Twelfth Grade Ohio Proficiency Test ("OPT") and the Ohio Vocational Competency Assessment ("OVCA"). In 1995, Hollie Rea took both the Twelfth Grade OPT and the OVCA. After Rea took the examinations, she and her father requested access to portions of the OPT and OVCA examinations at their local high school, but were told to contact ODE. Upon contacting ODE, the Reas were informed that they could review the OPT and a portion of the OVCA, the Ohio Competency Analysis Profile ("OCAP"), but only if they executed a nondisclosure agreement, prohibiting them from disclosing the examinations' contents. The Reas refused to sign the agreement and eventually instituted this action on August 28, 1996.[1]

{¶ 2} The cause is now before this court for final disposition upon the evidence and briefs.

———————

1. An alternative writ was granted by this court on November 20, 1996 ordering the filing of evidence and submission of briefs.

_____

*Melnick & Melnick* and *Robert R. Melnick*, for relators.

*Betty D. Montgomery*, Attorney General, and *Roger F. Carroll*, Assistant Attorney General, for respondent Ohio Department of Education.

*Betty D. Montgomery*, Attorney General, *Lawrence J. Miltner* and *Lauren M. Ross*, Assistant Attorneys General; *Porter, Wright, Morris & Arthur* and *Kathleen M. Trafford*, for respondent Ohio State University.

_____

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 3}** This court is presented with the issue of whether previously administered examinations of the OPT and OVCA are public records subject to disclosure under Ohio's open records law, R.C. 149.43. Since we find that both the OPT and a portion of the OVCA, specifically the OCAP, are public records, we grant relators a limited writ of mandamus and order the Ohio Department of Education and Ohio State University to release the requested materials.

RECORDS SOUGHT

**{¶ 4}** Specifically, the relators seek access to the unmarked assessment booklets, unmarked test instructions and questions, and scoring mechanisms of the Twelfth Grade OPT and OVCA relating to previously administered examinations. They do not seek prospective examinations yet to be administered. Nor do they request that any personal information or individual responses regarding the examinations be made available through this action.

**{¶ 5}** The Twelfth Grade OPT is one of several statewide proficiency tests established by the State Board of Education pursuant to R.C. 3301.0710.[2] The test is administered to ensure that students possess the requisite knowledge suited to that particular grade in the areas of reading, writing, mathematics, science, and

_____

2. Statewide proficiency tests are also administered at the fourth, sixth, ninth, and twelfth grade levels.

citizenship. The OPT is owned by the Ohio Department of Education. Any particular proficiency test contains questions from a question bank that have been used in previous tests, as well as new questions from the bank that have not previously appeared. Each new test also contains five or six new questions that are field tested for use in future test administrations. Thus, no two tests are exactly alike.

{¶ 6} The OVCA is also a statewide test that was developed to accelerate the modernization of vocational education in response to Am.Sub.S.B. No. 140, effective October 1989 (143 Ohio Laws, Part I, 718), and the Carl D. Perkins Vocational and Applied Technology Education Act Amendments of 1990 (Section 2301 *et seq.,* Title 20, U.S.Code). The OVCA examination is divided into two portions, the Work Keys assessment, and the OCAP. The OCAP is designed to measure a student's occupational skills in one of approximately forty vocations, as well as employability skills generic to all occupational areas. It is only one of two components that make up the OVCA. The other component of the test, titled "Work Keys," focuses on four academic skills necessary to operate in the workplace: Applied Mathematics, Locating Information, Reading for Information, and Applied Technology. The questions in each vocational test are drawn from a question bank containing approximately fourteen thousand questions. OSU creates a new test form for each administration of the OCAP. The OCAP portion of the OVCA is developed and owned by OSU, whereas the Work Keys component is owned by American College Testing ("ACT"), a private nonprofit corporation. Unlike the OPT, students are not required to take the OVCA.

## DISCLOSURE UNDER THE PUBLIC RECORDS ACT

{¶ 7} In order for documents or materials to be subject to disclosure under the Public Records Act, they must fall within the statutory definition of a "public record." R.C. 149.011(G) defines "records" as "any document, device, or item, regardless of physical form or characteristic, created or received by or coming

under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

{¶ 8} Pursuant to R.C. 149.43, a public record is subject to release, unless it falls within one of the Act's exceptions. R.C. 149.43(A)(1) defines a "public record" as "any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units." The definition excludes certain records from public inspection, including medical, adoption, probation, and parole records, and "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(o) (now 149.43 [A][1][p]).

{¶ 9} In order to foster open government, it is well settled that the Public Records Act is to be liberally construed. *State ex rel. The Miami Student v. Miami Univ.* (1997), 79 Ohio St.3d 168, 170, 680 N.E.2d 956, 958. Furthermore, the custodian of the records bears the burden of establishing that the public records are excepted from disclosure. *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911, 912. Any doubt is to be resolved in favor of providing access to such records. *State ex rel. The Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 621, 640 N.E.2d 174, 177. In reviewing relators' request, we find that the documents sought are public records.

{¶ 10} The OPT examinations clearly fall under the definition of a public record. By statute, ODE is required to develop the proficiency tests and ODE admits that it owns the OPT. Although ACT helps ODE develop the OPT, ODE acquires sole ownership of the OPT pursuant to contract. Furthermore, once the examination has been completed and scored, the OPT test results are maintained by ODE. Because ODE develops, owns, and maintains the OPT materials, they are considered public records under R.C. 149.43.

{¶ 11} Likewise, the OCAP is considered a public record. Those records controlled by OSU meet the statutory definition of a public record, since a state

4

university is considered a "public office" for purposes of the Public Records Act. See *Halaby v. Bd. of Directors of Univ. of Cincinnati* (1954), 162 Ohio St. 290, 55 O.O. 171, 123 N.E.2d 3. R.C. 149.43 has been construed broadly to include "anything a public office utilizes to carry out its duties and responsibilities." *State ex rel. Jacobs v. Prudoff* (1986), 30 Ohio App.3d 89, 30 OBR 187, 506 N.E.2d 927, paragraph one of the syllabus. The OCAP portion of the OVCA assessment is developed and owned by OSU, and utilized to evaluate student's vocational skills pursuant to the law. Thus, it is a public record.

{¶ 12} However, we do not consider the Work Keys portion of the OVCA, owned and developed by ACT, to be a public record.[3] This court has interpreted the Public Records Act to include records under the control of a public office even if those records are not within its custody. *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 661 N.E.2d 187. However, in order for a private entity to be subject to R.C. 149.43, (1) it must prepare the records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose. *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464. Although ACT developed the Work Keys assessment in conjunction with ODE in order to carry out ODE's responsibilities, the evidence fails to show that the second and third prongs of the *Mazzaro* test are satisfied. ACT is solely responsible for the development and content of Work Keys. Neither ODE nor OSU oversees this development, and there is no evidence that they either receive or otherwise have access to the Work Keys assessments for such purposes. Therefore, the Work Keys portion of the OVCA is not a public record.

---

3. Relators request the release of the "Reading section," "Mathematics portion," and the "Locating Information portion" of the OCAP. However, these titles make up the Work Keys section of the OVCA, not the OCAP. Since it is apparent that relators seek all portions of the OVCA, both Work Keys and OCAP, we construe their pleading accordingly. Civ.R. 8(F).

{¶ 13} Although the OPT and the OCAP portion of the OVCA are public records, we must next decide whether they fall within one of the specific exceptions to the Public Records Act. ODE asserts that the OPT is excluded from disclosure under R.C. 149.43 because its release would violate state law. Specifically, ODE argues that R.C. 3319.151 and Ohio Adm.Code 3301-13-05 prevent the release of these records. R.C. 3319.151, which prohibits assisting a pupil in cheating on a proficiency test, states that "no person shall reveal to any student any specific question that the person knows is part of a test to be administered * * * or in any other way assist a pupil to cheat on such a test." Likewise, Ohio Adm.Code 3301-13-05 establishes test security provisions for the various proficiency tests. ODE contends that the release of test questions would, in effect, assist pupils in cheating, since numerous questions are continually reused on subsequent proficiency exams. We find ODE's argument unpersuasive. ODE maintains that it is necessary to reuse such questions so that each proficiency test is comparable to past tests. However, ODE admits that no two tests are alike. The fact that ODE chooses to reuse past test questions in no way constitutes "cheating" as envisioned under R.C. 3319.151 and Ohio Adm.Code 3301-13-05.

{¶ 14} The recent passage of Am.Sub.S.B. No. 55 supports the argument that the release of past tests does not violate state law. The statute requires ODE, beginning in 1999, to make public proficiency tests the year after they have been administered. Given the magnitude and significance attributed to these tests, it seems obvious that the General Assembly was concerned with the public's frustration in gaining access to them. As education of its citizenry is one of the most important functions of the state, the legislature has made it clear its intent that parents, students, and citizens have access to these tests in order to foster scrutiny and comment on them free from restraint. ODE has failed to demonstrate that disclosure of past examinations of the OPT would violate state or federal law.

6

**{¶ 15}** OSU also asserts that the OCAP is exempt from disclosure, since its release is prohibited by state and federal law, *i.e.,* it is a protected trade secret. R.C. 1333.61(D) defines a "trade secret" as "information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement * * * that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

**{¶ 16}** We have previously held that "[t]he protection of competitive advantage in private, not *public*, business underpins trade secret law." (Emphasis added.) *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 264, 602 N.E.2d 1159, 1163-1164. Thus, the question arises whether a *public* office can even have its own protected trade secrets. Furthermore, once material is publicly disclosed, it loses any status it ever had as a trade secret. *Ruckelshaus v. Monsanto Co.* (1984), 467 U.S. 986, 1002, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815, 832. When OSU developed the OCAP for the *public* purpose of evaluating school students pursuant to state and federal requirements, the test was effectively disseminated into the public domain. Thus, it lost any right to be considered, if it ever was, a trade secret.

**{¶ 17}** OSU also argues that federal copyright laws prohibit the release of the OCAP. We reject this argument. Exceptions to public records requests do not include the copyright defense where the public records fall under the "fair-use" exception to the federal copyright statute or where the copyrighted material is purchased by the public office or agency that is the subject of the public records request. Sections 107 and 109(a), Title 17, U.S.Code.

{¶ 18} Relators have no intention of copying these materials for commercial resale purposes. The fair-use exception allows reproduction and copies without infringement of a copyright where the material will be used for purposes such as criticism, research, comment, and for other educational or nonprofit purposes that are not commercial in nature.

{¶ 19} OSU next argues that under R.C. 3345.14, the General Assembly has specifically recognized that public universities are allowed to control the products of their research. R.C. 3345.14 specifically states that "[a]ll rights to and interests in discoveries or inventions, including patents thereon, which result from research or investigation conducted in any experiment station, bureau, laboratory, or research facility of any state college or university shall be the sole property of such college or university." OSU argues that R.C. 3345.14 is a specific exception to R.C. 149.43, and that as a special provision, R.C. 3345.14 prevails over the general provision. R.C. 1.51.

{¶ 20} However, there is no indication in the statute itself that it was designed to supersede the requirements of R.C. 149.43, and there is no irreconcilable conflict between the two statutes. Control of dissemination of intellectual property to private persons does not necessarily imply that the legislature intended to exempt public universities from the requirements of the Public Records Act. R.C. 149.43 already provides specific exemption for intellectual property. It is unnecessary to create an additional exception to the Public Records Act beyond the face of the statute. R.C. 3345.14 merely grants state colleges and universities the general contractual power to assign products of research, and is subject to R.C. 149.43.

{¶ 21} Finally, OSU argues that the OCAP test is excluded from release under the intellectual property record exception to the Public Records Act. R.C. 149.43(A)(5) defines an "intellectual property record" as "a record, other than a financial or administrative record, that is produced or collected by or for faculty or

staff of a state institution of higher learning in the conduct or as a result of study or research on an educational, commercial, scientific, artistic, technical, or scholarly issue, regardless of whether the study or research was sponsored by the institution alone or in conjunction with a governmental body or private concern, *and that has not been publicly released, published, or patented*." (Emphasis added.)

{¶ 22} The italicized language above is fatal to respondent's argument. Unlike a design drawing or secret formula kept under lock and key, the OCAP is an assessment tool utilized to evaluate public school students. Construing R.C. 149.43 liberally, we find that the placement and use of the test within the public educational domain is sufficient to constitute public release under the statute. The intellectual property record exception was designed to prevent private persons from using the Public Records Act to appropriate intellectual property for private gain. It was not designed to inhibit the release of materials used to further the state's educational goals. See, *e.g., Progressive Animal Welfare Soc. v. Univ. of Washington* (1994), 125 Wash.2d 243, 254-255, 884 P.2d 592, 599.

{¶ 23} We conclude that previously administered OPT and OCAP examinations are subject to disclosure pursuant to R.C. 149.43. The tremendous implications for students who take such tests or assessments cannot be underestimated. The instruments that evaluate students and determine their capabilities should not be enshrouded in a cloak of secrecy, isolated from the scrutiny and oversight of the general public, concerned parents, and students themselves. ODE and OSU argue that access has always been granted, albeit subject to a nondisclosure form. However, beyond a few narrowly limited exceptions, the Public Records Act is unconditional. Once records are deemed public, and not subject to an applicable exception, a public office cannot subvert or avoid its duty to disclose such records through restrictive agreements. Although parents or the public could view the previously administered tests, the nondisclosure agreement effectively negated any chance that legitimate concerns

could be raised through public exposure and debate.  It is paramount that such tests are subjected to the keen eye of the public to ensure that the state does not stray from its duty to properly educate Ohio's citizenry.

{¶ 24} Accordingly, we grant relator's writ of mandamus in part and order the disclosure of the OPT and OCAP materials in question.

*Limited writ granted.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 25} I would find that the materials in question are exempted from disclosure under R.C. 149.43(A)(1) because the release of the records is prohibited by state or federal law.  Therefore, I respectfully dissent and would deny the writ.

{¶ 26} Ohio's Public Records Act, R.C. 149.43, defines a "public record" as "any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except * * * [r]ecords the release of which is prohibited by state or federal law."  R.C. 149.43(A)(1)(o).  While I would agree that the requested materials constitute records kept by a public office, for the reasons that follow, I would find that both the OPT and the OCAP fall within the exception of "records the release of which is prohibited by state or federal law."

OHIO PROFICIENCY TEST (OPT)

{¶ 27} I would find that the release of the OPT materials is prohibited by state law, specifically, Ohio Adm.Code 3301-13-05 and R.C. 3319.151.

*Ohio Adm.Code 3301-13-05*

{¶ 28} First, Ohio Adm.Code 3301-13-05 provides:

"(A) With the exception of test materials specifically designated as 'practice test' by the department of education, all test questions and all other materials which are considered part of the fourth, sixth, ninth, and twelfth-grade proficiency tests * * * shall be considered secure and subject to the provisions of sections 3319.151 and 3319.99 of the Revised Code and to the provisions of this rule.

"* * *

"(D) No person shall release, cause to be released, reproduce, or cause to be reproduced any secure test materials through any means or medium including, but not limited to, electronic, photographic, written, or oral."

{¶ 29} These security provisions established by Ohio Adm.Code 3301-13-05 are an essential element of the proficiency testing program that the State Board of Education is required to implement through the adoption of rules pursuant to R.C. 3301.07, 3301.0710, and 3301.0711. To find that the administrative rule does not apply to proficiency tests already administered would undermine the entire purpose of this rule. This court has recognized that the R.C. 149.43(A)(1) exception for other "state laws" includes properly adopted administrative rules. *State ex rel. Beacon Journal Publishing Co. v. Waters* (1993), 67 Ohio St.3d 321, 617 N.E.2d 1110. Accordingly, I would find that Ohio Adm.Code 3301-13-05 is such a "state law," which prohibits the release of the OPT.

*R.C. 3319.151*

{¶ 30} The second state law which prohibits the release of the OPT is R.C. 3319.151. The plain language of the statute states, "No person shall reveal to any student any specific question that the person knows is part of a test to be

administered under section 3301.0711 of the Revised Code * * *." R.C. 3319.151(A).

{¶ 31} To find that R.C. 3319.151 applies only prior to the administering of a proficiency test and that once a proficiency test has been administered, the test is no longer protected by R.C. 3319.151 is to interpret the statute so as to reach an absurd result. Although no two tests are alike, in order to be sure that tests are similar in difficulty, a certain number of old test questions will always reappear on new versions of the OPT. Further, a few new questions are field-tested on each test for use in the future. The validity and comparability of the test results depend on reuse of secure test questions. To allow the OPT to be subject to unrestricted use and copying under R.C. 149.43 would compromise the current question bank and prevent the development of new questions. The majority would have the respondent Ohio Department of Education ("ODE") develop all new questions for each test. Common sense and reality dictate that time and lack of resources make that aspiration impossible and would prevent ODE from carrying out its duty to establish a proficiency testing program for public school students throughout Ohio.

{¶ 32} The majority concludes that the recent passage of Am.Sub.S.B. No. 55 supports the argument that the release of past tests does not violate state law. This statute will require ODE, beginning in 1999, to make proficiency tests public the year *after* they have been administered. Thus, the legislature has provided for public access to the OPT materials one year after the test has been administered, as opposed to the immediate release called for by the majority's granting of the writ.

{¶ 33} Inherent in the framework of our Constitution's separation of powers is the legislature's power to create and/or change the law. While it appears that the legislature has decided to act on this issue and make the OPT public, it is not for this majority to change the General Assembly's effective date of the statute. Instead, the court should allow the legislature to exercise its discretion in deciding when a bill shall become law. Further, at the time the relators instituted this

mandamus action, Am.Sub.S.B. No. 55 had not been enacted, and, as such, does not affect this action.

{¶ 34} Therefore, I would find that the OPT materials are prohibited from release by state law and would deny the writ as to the release of the OPT materials.

OHIO COMPETENCY ANALYSIS PROFILE (OCAP)

{¶ 35} I would further find that the OCAP is prohibited from release by both state law (R.C. 1333.61, 3345.14, and 149.43[A][5]) and federal law (Section 107, Title 17, U.S.Code).

*R.C. 1333.61*

{¶ 36} First, the OCAP is a trade secret which is prohibited from disclosure under the Ohio Trade Secrets Law (now codified in R.C. 1333.61) and as such is exempt from the disclosure and copying requirements of R.C. 149.43(B).

{¶ 37} R.C. 1333.61 provides:

"(D) 'Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

"(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

"(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

{¶ 38} As for the first requirement, clearly, the economic and educational value of the OCAP test materials is dependent upon the continued confidentiality of the test materials. The OCAP materials are Ohio State University-Vocational Instructional Materials Laboratory's ("VIML's") largest asset, comprising approximately seventy-five percent of VIML's revenue. Further, VIML actively

markets the OCAP materials to other states. In turn, these commercial sales enable VIML to continue to develop and maintain the assessment, while reducing the costs that now are borne by ODE and vocational school districts throughout Ohio. The economic value of the OCAP materials is entirely dependent upon the fact that they are not in the public domain. The majority's release of the materials will no doubt cause respondent VIML to suffer a substantial competitive disadvantage, possibly so severe that it may force respondent to withdraw from the business of developing such assessments.

{¶ 39} As for the second requirement of the trade secret test, as set forth in R.C. 1333.61, VIML has taken reasonable efforts to maintain the secrecy of the OCAP test items. The OCAP, as is the OPT, is a secure test, meaning "a nonmarketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration." Section 202.20(b)(4), Title 37, C.F.R. Steps taken to maintain the security of the OCAP include password-protecting all computers which contain test information, shredding documents containing test development information or test items, securing existing documents containing test items or development information, copyrighting each of the test forms, and enforcing strict review procedures designed to maintain the integrity of the materials.

{¶ 40} The majority stretches to conclude that once VIML developed the OCAP for the public purpose of evaluating school students pursuant to state and federal requirements, the test was effectively disseminated into the public domain, thereby losing any trade secret status it might have had. To the contrary, the mere development of the OCAP materials does not constitute public dissemination. Rather, the OCAP continued to maintain its trade secret status until the majority granted this writ of mandamus, which permits unrestricted access and copying of the OCAP. Accordingly, I would find that the OCAP materials fall within the trade

14

secret exception to the Ohio Public Records Act. See *State ex rel. Seballos v. School Emp. Retirement Sys.* (1994), 70 Ohio St.3d 667, 640 N.E.2d 829.

*R.C. 3345.14*

{¶ 41} The second state law that prohibits release of the OCAP is R.C. 3345.14, which makes the products and results of university research the sole property of the university and gives the university board of trustees the right to determine if, when, and under what circumstances interests or rights to such property will be conveyed to other individuals.

{¶ 42} R.C. 3345.14 provides:

"All rights to and interests in discoveries or inventions * * * which result from research or investigation conducted in any * * * research facility of any state college or university shall be the sole property of such college or university. * * *

"As may be determined from time to time by the board of trustees of any state college or university, the college or university may retain, assign, license, transfer, sell, or otherwise dispose of, in whole or in part and upon such terms as the board of trustees may direct, any and all rights to, interests in, or income from any such discoveries, inventions, or patents which the college or university owns or may acquire. * * *"

{¶ 43} A university cannot benefit from its right to own its research and inventions if such research and inventions are required to be publicly disseminated on demand. Unrestricted public disclosure of the OCAP materials will completely destroy the educational and as well as commercial value of the test materials.

{¶ 44} Dr. Deborah Bingham Catri, Director of VIML, explained:

"If it is generally known that a test maker reuses publicly disclosed test items, the reuse of test items raises very serious concerns about the validity and fairness of the test. The nature of the concern is obvious: *that students' responses to questions may not reflect their knowledge of the subject matter or own skills, but merely their familiarity with the particular questions asked.*

"Concerns about the reuse of test items are particularly heightened when the test is intended to test knowledge or skills in a particular area and when the test form is in a multiple choice format. Based upon the currently available empirical studies on the reuse of test items and the general literature on competency test development, *it would be inappropriate as a matter of sound testing policy for a competency testing program to engage in a practice of reusing publicly disclosed test items.*" (Emphasis added.)

**{¶ 45}** I cannot agree with the conclusion that the development of new test forms obviates the need to reuse some test questions. Sometimes old questions must be repeated in new test forms in order to assure that students do not pass or fail a particular test because the test was easier or more difficult than a previous test. Thus, test questions must be repeated as part of the empirical evaluation of the test items themselves, as noted by Dr. Catri.

**{¶ 46}** It takes years to develop a test question data base of the level that VIML has achieved for the OCAP. In fact, it can take between six and twelve months to create a single test item. Thus, to compromise the current test bank is to ignore the time and resources spent to attain the current level of test questions, which is needed to develop new questions in the future. Further, it destroys the market for OCAP assessments, VIML's ownership interest, and VIML's right to control the assessments' transfer or conveyance. Therefore, I would find that the OCAP materials are prohibited from release by R.C. 3345.14.

**{¶ 47}** The final state law which prohibits the release of the OCAP materials is the intellectual property record exemption, R.C. 149.43(A)(5), which defines an "intellectual property record" as:

"[A] record, other than a financial or administrative record, that is produced or collected by or for faculty or staff of a state institution of higher learning in the conduct or as a result of study or research on an educational, commercial, scientific, artistic, technical, or scholarly issue, regardless of whether the study or research

16

was sponsored by the institution alone or in conjunction with a governmental body or private concern, and that has not been publicly released, published, or patented."

{¶ 48} The majority finds that the language "and that has not been publicly released, published, or patented" is fatal to OCAP's coming under the intellectual property record exemption. However, again, I would *not* find that the OCAP materials have been publicly released or published. Rather, they were merely administered and VIML has continued to attempt to maintain the integrity and security of the OCAP materials. Therefore, I would find that the OCAP materials fall within the R.C. 149.43(A)(5) exemption and accordingly should not be subject to public disclosure.

*Federal Copyright Law*

{¶ 49} Not only is the OCAP prohibited from disclosure under state law, but under federal copyright law as well. The majority concludes that the fair-use exception to the federal copyright statute applies to allow the reproduction and copying of the OCAP materials without copyright infringement.

"In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

"(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

"(2) the nature of the copyrighted work;

"(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

"(4) the effect of the use upon the potential market for or value of the copyrighted work." Section 107, Title 17, U.S.Code.

{¶ 50} While the purpose and character of the use are arguably not of a commercial nature, I would find the other three factors of the fair-use exception weigh in VIML's favor. First, the nature of the copyrighted work is such that copying and disseminating would not merely decrease the economic value of the

OCAP, but instead would make the test bank questions virtually worthless. Second, the amount and substantiality of the portion used in relation to the copyrighted work as a whole also weigh in VIML's favor. The relators are seeking unmarked assessment booklets, unmarked test instructions, and questions from previously administered examinations. This request and the effect of the majority's issuance of the limited writ constitute all of the OCAP materials.

{¶ 51} Third, and most important, the effect of the use upon the potential market for or value of the copyrighted work weighs most heavily in VIML's favor. In terms of dollars and cents, the effect of the majority's allowing a fair-use exception to the federal copyright law is to effectively cripple VIML's ability to sell the OCAP materials to other states. But the value of the copyrighted work in this instance should be measured in terms of the effect such a public dissemination will have on the state's capacity to develop, utilize, and maintain its responsibility to assess the ability of its public school students.

{¶ 52} Further evidence of the majority's incorrect conclusion that the fair-use exception applies to the OCAP materials is found in the Congressional testimony of Ralph Oman, Register of Copyrights, regarding the fair-use statute: "Secure tests are particularly vulnerable to having their utility obliterated by unauthorized disclosure. *The courts have, accordingly, been particularly solicitous in protecting these works. Indeed, so far as we are aware, the courts have never upheld a fair use claim advanced by any private entity with regard to copying of secure tests or test questions.*" (Emphasis added.) 137 Cong. Rec. Section 13923.

{¶ 53} Further, Senator Grassley noted that "the act [the fair-use statute] is not intended 'to reduce the protection of secure tests, whose utility is especially vulnerable to unauthorized disclosure.' * * * [T]his bill essentially incorporates the view courts have had with respect to this issue. * * * [C]ourts have recognized the special character of secure tests by rejecting fair use claims." 137 Cong. Rec.

Section 13923. In addition, Senator Leahy also noted that the bill was not intended to reduce the protection of secure tests. 102 S. Rpt. 141.

{¶ 54} Accordingly, I would find that the fair-use exception of Section 107, Title 17, U.S.Code does not apply and, therefore, release of the OCAP materials is prohibited by federal copyright law.

*Section 1232g, Title 20, U.S.Code (FERPA)*

{¶ 55} In addition to the prohibitions addressed above, relators contend that Section 1232g, Title 20, U.S.Code, as well as Section 1232h, Title 20, U.S.Code, applies to VIML's current nondisclosure practices. This contention is without merit.

{¶ 56} I would find that the federal Family Educational Rights and Privacy Act, Section 1232g, Title 20, U.S.Code ("FERPA"), does not require VIML to give relators unrestricted access to or copies of the OCAP materials. FERPA provides:

"No funds under any applicable program shall be made available to any State educational agency (whether or not that agency is an educational agency or institution under this section) that has a policy of denying, or effectively prevents, the parents of students the right to inspect and review the education records maintained by the State educational agency on their children who are or have been in attendance at any school of an educational agency or institution that is subject to the provisions of this section." Section 1232g(a)(1)(B), Title 20, U.S.Code.

{¶ 57} I would hold against the applicability of FERPA for a variety of reasons. First, VIML is not a "state educational agency." Second, the OCAP materials are not "education records." Yet the most important reason is that the statute does not confer a right to obtain copies of the education records. Instead, the statute merely grants a right to inspect and review those records. The record in this case demonstrates that VIML extends to parents, or any one else for that matter, the right to inspect and review the OCAP materials. VIML merely prohibits the copying of the OCAP materials.

*Section 1232h, Title 20, U.S.Code (Protection of Pupil Rights)*

**{¶ 58}** The second federal statute relied upon by relators is the "Protection of Pupil Rights" law, Section 1232h, Title 20, U.S.Code, which provides:

"All instructional materials, including teacher's manuals, films, tapes, or other supplementary material which will be used in connection with any survey, analysis, or evaluation as part of any applicable program shall be available for inspection by the parents or guardians of the children." Section 1232h(a), Title 20, U.S.Code.

**{¶ 59}** Again, VIML makes the OCAP materials available for inspection. However, I would find that the OCAP materials are not instructional materials: they are testing or assessment materials. Therefore, I would not find either of these federal statutes to be applicable to the OCAP materials.

**{¶ 60}** In conclusion, the majority contends that there are tremendous implications for students who take such tests or assessments and that these materials are enshrouded in a cloak of secrecy. I agree that the test materials have a significant impact on students; however, both ODE and VIML allow an opportunity for the public to review these test materials. ODE allows individuals an opportunity to review any proficiency test after the test has been given under secure conditions and provided the individual signs a nondisclosure agreement. VIML also has procedures for reviewing the OCAP assessment materials. These procedures allow parents, guardians, educators, elected officials, and members of the general public to review the testing materials. Of course, security measures are necessary to guarantee the integrity of the test materials. The materials must be reviewed on-site, with a signed non-disclosure of information agreement, and the materials may not be reproduced. But this does not mean that these testing materials are enshrouded in a cloak of secrecy.

**{¶ 61}** The State Board of Education is required by statute to adopt rules establishing a statewide program to test student proficiency. Today the majority

20

grants a writ that jeopardizes the integrity of the statewide program. I believe in upholding our Public Records Act and granting public disclosure for items that legitimately fall within the Act. However, today the majority allows not just public access, but copying of materials whose effectiveness depends upon remaining protected from mass dissemination.

{¶ 62} This court's decision will not serve Ohio's school children through granting them and their parents access to these testing materials. Rather, it will only weaken the testing system and ultimately waste time and resources to develop new materials. I, therefore, respectfully dissent and would deny the writ of mandamus.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

_____

**COOK, J., dissenting.**

{¶ 63} I too would deny the writ of mandamus for the reasons given in Justice Stratton's dissent. I write separately only to clarify my differing views on two points. First, while I agree that both the OPT and OCAP fall within the R.C. 149.43(A)(1)(o) exception to the definition of a "public record," I do not believe R.C. 3345.14 provides a basis for applying the exception. I cannot agree that the test materials at issue are "discoveries or inventions."

{¶ 64} Furthermore, I believe it is unnecessary to address whether VIML is a "state educational agency," or whether the OCAP test materials are "education records" or "instructional materials," in analyzing the applicability of the FERPA and the Protection of Pupil Rights law. Both federal laws require that the covered materials be made "available" for *inspection*. That was done in this case. Neither federal Act grants a right to obtain personal copies of the materials. Moreover, neither Act prohibits the entity holding the materials from instituting, as a condition of access, a nondisclosure policy to which the party seeking materials must agree.

MOYER, C.J., concurs in the foregoing dissenting opinion.