NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0752n.06
Filed: October 23, 2007

No. 06-4260

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ADCOR INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BEVCORP, LLC; MICHAEL K. | ) | NORTHERN DISTRICT OF OHIO |
| CONNELLY; VICTORIA L. CONNELLY; | ) | |
| MICONVI INDSUTRIES, INC.; MICONVI | ) | |
| PROPERTIES, LLC; BARON HAAG; | ) | |
| CHESTER ROMP, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MOORE and COOK, Circuit Judges; and ACKERMAN, District Judge[*]

COOK, Circuit Judge. Plaintiff Adcor Industries, Inc., appeals the district court's summary judgment order dismissing Adcor's trade-secrets-misappropriation claim as time-barred by the discovery rule. Adcor also appeals the district court's grant of summary judgment in favor of the defendants on Adcor's claims that they breached or conspired to breach a consent decree. Having examined Adcor's arguments for reversal of the district court's judgment, we determine that none has merit and affirm.

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

No. 06-4260
*Adcor Industries v. Bevcorp, LLC, et al.*

I

A complex history sets the stage for our review. We take the following factual and procedural background of this case largely from the district court's November 10, 2005, memorandum of opinion and order:

> This case arises from a Consent Decree entered in March 1988 in *Crown Cork & Seal Co, Inc v. Brau Mfg, Inc, Haag & Romp Design Engineering Consultants, Baron Haag and Chester Romp*, Case No. C87-3300 (Krenzler, D.J.) . . . . Baron Haag and Chester Romp, defendants in the instant case, were defendants in *Crown Cork & Seal*, along with their companies Brau Manufacturing ("Brau") and Haag & Romp Design Engineering Consultants (collectively, the "Brau Defendants"). In the Consent Decree, Haag and Romp admitted that, beginning in 1967, they paid employees of Crown Cork & Seal over $300,000 to obtain drawings of Crown parts and other proprietary information. *Id*. ¶¶ 1–6. They admitted using the drawings to manufacture replacement parts for Crown beverage fillers, and to create their own drawings for the same parts-all of which enabled them to compete unfairly with Crown in the marketplace. *Id*. ¶ 3. Haag and Romp also p[l]eaded guilty to federal criminal charges stemming from this scheme.

> While the Decree allowed Haag and Romp to remain in the business of repairing and reconditioning beverage fillers, including Crown fillers, it prohibited them from manufacturing or obtaining other than from Crown, any Crown parts for this purpose, and from using any of the trade secrets or knowledge illegally obtained in furtherance of such business. Consent Decree ¶ 10. The Decree required Haag and Romp to inform their employees, customers, the trade and the public that they had forever withdrawn from the business of manufacturing Crown parts and, to the extent such parts would be required in their repair or reconditioning business, they would use only genuine Crown parts purchased directly from Crown. *Id*. ¶ 11(d). The Decree also required them to promptly return to Crown all purloined drawings and other proprietary material in their possession, as well as any such documents that came into their possession in the future. It prohibited them from replicating any documents pertaining to the manufacture of Crown parts. *Id*. ¶¶ 11, 12. Haag and Romp agreed that the Consent Decree and its prohibitions would apply not only to them, but to their "successors, assigns, affiliates, agents, representatives, heirs,

administrators, executors, family members, and any person dealing directly or indirectly through them or in concert with them." *Id*. ¶¶ 7, 9.

In 1991 and while still working at Brau Manufacturing, Defendants Michael and Victoria Connelly (respectively, the lead mechanic and executive assistant) started what became a series of businesses (Bevcorp Industries, Inc., Bevcorp Properties, LLC, Miconvi Industries and Miconvi Properties) to service, refurbish and sell replacement parts for, among other things, Crown beverage fillers. . . . The Connellys continued to work for Brau until 1992, when they left Brau to devote their full time to their own businesses. In May 2000, Bevcorp Properties purchased the real estate and certain equipment of Brau for $1.2 million, and moved into Brau's former building. Shortly thereafter, at Haag and Romp's request, the Connellys had their employees move everything they didn't purchase to a Willoughby, Ohio storage facility rented by Haag and Romp.

Meanwhile, in 1997, Simplimatic, Inc. purchased Crown's Machinery Division and the resulting company became known as Crown Simplimatic, Inc. In 1998, Crown Simplimatic sued Adcor (the plaintiff in this case and a Crown competitor at the time), claiming that Adcor had misappropriated Crown drawings relating to a valve body which allegedly could not be made without Crown drawings. The parties eventually settled that case and, in December 2000, Adcor acquired certain assets of the Crown entities, including its drawings, out of bankruptcy.

*Adcor Indus. v. Bevcorp, LLC*, No. 1:03 CV 1901, 2006 WL 2460864, at *1–2 (N.D. Ohio Aug. 23, 2006).

When a company called Enprotech Corporation purchased the assets of Bevcorp Industries and formed an entity called Bevcorp, LLC, the Connellys became its officers. With the Connellys at the helm, Bevcorp Industries changed its name to Miconvi Industries, Inc., and Bevcorp Properties changed its name to Miconvi Properties, LLC. Miconvi Properties leases the former Brau real estate to Bevcorp, LLC.

No. 06-4260
*Adcor Industries v. Bevcorp, LLC, et al.*

On September 9, 2003, Adcor filed a complaint against Bevcorp, LLC, the Connellys, Miconvi Industries, Miconvi Properties, Baron Haag, and Chester Romp, raising claims of trade secrets misappropriation, breach of the consent decree, and conspiracy to breach the consent decree.[1] The court severed and tried the contempt claims, then directed the parties to submit post-hearing briefs. But while the court was in the process of preparing a ruling from that trial, Adcor filed a request for an emergency contempt hearing and sanctions upon discovering business records and approximately 1,100 Crown or Crown-derivative drawings in a safe in Haag and Romp's Willoughby storage facility, tipped off by Romp's testimony at the earlier hearing. The court held the requested supplemental contempt hearing on June 22, 2005. During the hearing, Adcor produced the drawings, together with evidence suggesting that Brau drawings migrated to one of Bevcorp's customers through Bevcorp. *See* Supp'l Contempt Hr'g Tr. (J.A. 125–58).

The district court resolved the contempt claims, which required Adcor to prove to a reasonable certainty that the Connellys acquired Crown or Brau drawings directly from Haag and Romp, by granting summary judgment to the Connellys.[2] As for the trade secrets misappropriation claim, the district court granted summary judgment in favor of Bevcorp, finding that the submissions by Bevcorp would convince any rational fact finder that the claim was time-barred by the discovery

---

[1] The district court dismissed Adcor's other claims for tortious interference with business contracts and unfair competition, and Adcor does not appeal that dismissal.

[2] Haag and Romp were found in contempt and fined $150,000 between them.

- 4 -

rule.[3]   Though Haag and Romp had not *moved* for summary judgment on the trade secret

misappropriation claim, the court granted judgment sua sponte in their favor, reasoning that the same

accrual-date evidence would bar any claim against them.

II

A

Adcor first challenges the district court's determination of the accrual date for the

misappropriation claim, saying that genuine issues of material fact preclude judgment as a matter

of law.[4]

According no deference to the district court's conclusion, as is our practice in reviewing a

grant of summary judgment, *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006), and

---

[3]As noted by the district court in a footnote to its August memorandum opinion, the parties agreed that Adcor stood in the shoes of the Crown entities for purposes of the limitations period. *Adcor Indus. v. Bevcorp, LLC*, No. 1:03 CV 1901, 2006 WL 2460864, at *3 n.2 (N.D. Ohio Aug. 23, 2006); *see also Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 785 (N.D. Ohio 2005) ("There is no dispute that this four-year statute of limitations applies to Adcor's misappropriation claim.  There is also no dispute that Adcor is subject to all the defenses that could have been raised by the defendants against Adcor's predecessors-in-interest, Crown and Crown Simplimatic." (citing *Inter Ins. Exch. of the Chicago Motor Club v. Wagstaff*, 59 N.E.2d 373, 375 (Ohio 1945))).

[4]We take this as the first properly presented issue because, though Adcor's Statement of Issues Presented for Review suggests an abuse of discretion by the district court in "limiting discovery on the Consent Decree issues solely to misappropriated drawings in the hands of Appellees that were 'identical' to the drawings discovered in the Brau warehouse," its brief fails to develop any argument on this issue to support the claim.  Adcor thus forfeits this argument.  *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir.), *cert. denied*, 528 U.S. 897 (1999) (stating that a party forfeits an argument on appeal when it is mentioned in only a cursory manner with no further development).

construing all evidence in the light most favorable to Adcor, the nonmoving party, *id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)), we are unpersuaded by Adcor's arguments for reversal on this issue.

As the parties agree, Ohio's Uniform Trade Secrets Act supplies the relevant limitations period: "An action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." Ohio Rev. Code Ann. § 1333.66. Likewise, the parties agree that the statute incorporates the discovery rule, meaning we count time from when the trade secret's owner *could have* discovered the misappropriation, rather than when the wrong first occurred. *See O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, 730 (Ohio 1983) (describing the discovery rule as an exception to the ordinary accrual rule). "Discovery" as used here requires "knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1300-01 (Ohio 1984) (quoting *Schofield v. Cleveland Trust Co.*, 78 N.E.2d 167, 172 (Ohio 1948)). Because Adcor filed its action on September 9, 2003, we examine, as did the district court, the record evidence to determine whether the Crown entities had sufficient reason before September 9, 1999, to suspect the Connellys misappropriated their trade secrets (i.e., the Crown drawings). Like the district court, we conclude they *did* have reasons to suspect, they *did not* investigate those suspicions, and they affirmatively *forwent*—for economic reasons—bringing a claim.

Former employees supply evidence that Crown suspected misappropriation before Adcor purchased its trade secrets. For example, Terry Gordon, a former Crown service manager, testified that he learned Bevcorp was manufacturing Crown parts in the "early '90s," that he came to understand that Bevcorp produced an increasing number of parts, and that he heard rumors that Bevcorp took drawings from Brau. Gordon discussed the possibility of misappropriation with two named managers at the company. At one point, he saw Michael Connelly doing suspiciously technical repair work. He related the incident to his manager, who promised to "check into it."

Chuck Darby, Crown's director of operations, corroborated Gordon's account when he stated that people at the company suspected the Connollys of misappropriation, though he limited his statements in a later affidavit. Darby first described widespread rumors of drawings, then later claimed he heard only one sourceless and incredible rumor. *Compare* Charles Darby Aff. 5/19/2005 ¶4 (J.A. 572) ("Many people . . . knew that Mike Connelly had left Brau Manufacturing, started Bevcorp, and was selling Crown parts. Some people at [Crown] suspected that Mike Connelly had taken Crown drawings from Brau Manufacturing when he left and was using them in his new business, Bevcorp"), *with* Charles Darby Aff. 9/28/2005 ¶3–4 (J.A. 633) ("I cannot recall the source of this rumor. I did not believe the rumor . . . I possess no knowledge or information to support any suspicion or belief that Mike Connolly or Bevcorp possess or use Crown drawings.").

Robert Reiss, a Crown employee who eventually joined Adcor, gave supportive—albeit inconsistent—testimony. In 2003 he testified that he knew that outside entities were making Crown

parts and opined that "they got ahold of the drawings." In a later deposition, Reiss named two companies that were manufacturing Crown parts while he worked at Crown: Bevcorp and Serv-A-Tech. When confronted with his earlier testimony, he did not have "any idea" what he meant by his prior statements.

Adcor also submits affidavits from Crown leaders including B. Douglas Goodell and James W. Parker, who do not remember any rumors. But notice need not reach every member of an organization to be effective, and requiring such a rule would eviscerate the discovery rule's objective component. Far from creating a genuine dispute of fact, such blanket statements at most "show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

On top of all the other evidence indicating that Adcor possessed inquiry notice of the misappropriation, two employees' statements show that the delay in bringing suit was a strategy deadlock: Crown and Adcor vacillated on whether to sue or buy Bevcorp until it was too late. Darby mentioned that Crown considered buying out Bevcorp to stop the competition, but the company eschewed litigation because "Bevcorp's operations were not causing sufficient economic harm . . . to justify the cost of litigation." Charles Darby Aff. ¶10 (J.A. 573). Douglas Goodell stated that Adcor considered suing Bevcorp, among other companies, "in contemplation as one of many strategies."

Adcor resists the district court's labeling of the record evidence as undisputed. For example, Terry Gordon's testimony, it says, should be assessed as biased (Gordon being a former Brau

employee in line for Mike Connelly's position at Bevcorp), unclear, unreliable, and inconsistent. Such obvious and compelling economic interest in the outcome of the case, Adcor insists, should disqualify Gordon from being believed. As Bevcorp points out, however, a nonmovant does not necessarily defeat summary judgment by arguing that the fact finder could dismiss undisputed evidence as not credible. True, courts "may not make credibility determinations or weigh the evidence," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), but bare claims of bias do not undermine undisputed evidence, *see Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 353–54 (6th Cir. 2004). "[I]n the 'new era' of summary judgments," we have afforded trial courts "considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A defendant must frequently rely on evidence from its own employees in seeking summary judgment; courts may credit such testimony in the absence of some grounds to question it. *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 598 (6th Cir. 2005). Adcor did not offer any "affirmative evidence," *Cox*, 53 F.3d at 150, other than the employment relationship, to rebut the extensive list of misappropriation cues Adcor overlooked.

Adcor next argues that the district court erred in ignoring a second affidavit of Charles Darby limiting and qualifying his earlier statements suggesting widespread talk of misappropriation. The district court *did*, however, assess the second affidavit in its summary judgment opinion—the second affidavit simply did not affect the court's view. As emphasized in the decision denying reconsideration, "That Mr. Darby could not recall the names of the individuals at CC&S [Crown]

who knew or suspected that Michael Connelly purloined the drawings does not negate the general knowledge that he had at the time." Memorandum of Opinion and Order (J.A. 964). Such rumors triggered inquiry notice under Ohio law. Though Adcor argues that the discovery rule pressures litigants to file prematurely based on unsubstantiated rumors and suspicions, the discovery rule requires the owner of a trade secret to conduct a timely and reasonable *investigation* after learning of possible misappropriation, not to file prematurely. The discovery rule is wholly consistent with the nature of trade secrets; because trade secrets are not subject to a filing system, owners' diligence in taking affirmative steps to protect them is crucial. *See Ne. Ohio Coll. of Massotherapy v. Burek*, 759 N.E.2d 869, 878 (Ohio Ct. App. 2001) (plaintiff claiming misappropriation must "show the extent to which the information is known outside the business and the precautions which plaintiff has taken to guard the secrecy of the information"); *see also State ex rel. Rea v. Ohio Dep't of Educ.*, 692 N.E.2d 596, 601 (Ohio 1998) ("[O]nce material is publicly disclosed, it loses any status it ever had as a trade secret."). Though the district court conceded that rumors might not suffice in every case, this case involves known "convicted felons who misappropriated Crown's trade secrets," against whom Adcor had both the incentive and the means to police any repeat offenses. *Adcor Indus.*, 411 F. Supp. 2d at 791. Despite Adcor's insistence that any investigation by Crown would have encountered "lies, deceit, and shell games," Adcor ultimately discovered drawings and other evidence of misappropriation in an unlocked safe.

Adcor persists with a novel argument that the district court erred in failing to consider the possibility "that the misappropriation did not occur in a *single* transaction sometime in the early

1990's, but was the result of a concerted and ongoing effort to misappropriate Crown/Adcor drawings, whenever and by whatever means they could do so." Adcor Br. at 55. According to Adcor, even though the district court granted summary judgment to the defendants on earlier misappropriations, it should have permitted discovery on the question of whether there were additional misappropriations in 2000 when the Connellys and Bevcorp moved the safe containing the Crown drawings to the Brau warehouse. *Id*. at 58–59. Yet the Ohio statute clearly forecloses this argument, providing: "For the purposes of this section, a continuing misappropriation constitutes a single claim." Ohio Rev. Code Ann. § 1333.66. As the district court observed, "Adcor's interpretation of the limitations statute (i.e., that each misappropriation would trigger a new limitations period) would render the statute meaningless." Memorandum of Opinion and Order (J.A. 966). What's more, the district court examined Bevcorp's stash of drawings and found they differed from the Brau drawings, such that the safe could not have been their source; thus, even if Adcor's continuing wrong theory were cognizable under Ohio law, Adcor would not be able to show recent wrongs justifying separate relief. *See* Contempt Ruling, *Adcor Indus.*, No. 1:03 CV 1901, 2006 WL 2460864, at *9 (N.D. Ohio Aug. 23, 2006).

B

Next, Adcor contends that the district court erred in including Haag and Romp in the grant of summary judgment in the absence of a motion from them. Rumors that Bevcorp had Brau drawings sufficed to put Adcor on notice that the Brau defendants were again using Crown drawings.

Adcor cites no case forbidding granting summary judgment for corollary claims. Thus, the statute of limitations ran for claims against all of the Defendants.

C

Finally, Adcor claims the district court erred in granting summary judgment on Adcor's claims that the Connelly defendants were in contempt of the consent decree and conspired to violate the consent decree. We disagree because Adcor failed to meet its evidentiary burden, despite the opportunity for supplemental hearings.

Here the summary judgment question hinged on whether the Connelly Defendants were in contempt of the Consent Decree, a question that is reviewed for abuse of discretion. *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989). In a civil contempt proceeding, the burden is on the petitioner to "prove by clear and convincing evidence that the respondent violated the court's prior order." *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996).

The district court properly determined that although the evidence demonstrated that Michael Connelly procured and copied Crown drawings in the past, Adcor did not meet its burden of providing clear and convincing evidence that Michael Connelly obtained those drawings through Romp and Haag. 8/23/06 Memorandum of Opinion and Order 26 (J.A. 196).

Citing *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106 (6th Cir. 1981), Adcor also argues that the district court erred in determining that it failed to show by clear and convincing evidence that the

Connelly Defendants were in privity with Haag and Romp by purchasing their assets. Adcor

erroneously believes there are two points made in *Vulcan* supporting its position. First, Adcor points

to language explaining that it was immaterial whether the successor obtained title to the drawings

because "[t]he important point is that the drawings enabled [the successor] to construct a reline tower

to fulfill its contract with U.S. Steel." *Id.* at 1110. Second, Adcor cites *Vulcan* for the proposition

that "a company does not have to 'formally take over its predecessor's business' in order to be

considered a 'successor in interest.'" Adcor Br. at 60 (quoting *Vulcan*, 658 F.2d at 1111). Adcor

lacked clear and convincing evidence that Bevcorp succeeded Romp or Haag to anything but

manufacturing and storage facilities. More to the point, the district court found that there was not

clear and convincing evidence that the Connelly Defendants even obtained drawings from Haag and

Romp. Therefore, the question of whether the Connelly Defendants had title or formally took over

Haag and Romp's business is irrelevant. Accordingly, Adcor has not established that the district

court's privity decision was an abuse of discretion.

Adcor also asserts that the district court abused its discretion by failing to exercise in rem

jurisdiction over the drawings in question. "Federal courts have issued injunctions binding on all

persons, regardless of notice, who come into contact with property which is the subject of a judicial

decree." *United States v. Hall*, 472 F.2d 261, 265–66 (Former 5th Cir. 1972). A court may "enter[]

a decree binding on a particular piece of property" when it "is necessarily faced with the danger that

its judgment may be disrupted in the future by members of an undefinable class—those who may

come into contact with the property.  The in rem injunction protects the court's judgment." *Id.* at 266.

Adcor cites *Hall* and *Converse v. Highway Constr. Co. of Ohio*, 107 F.2d 127 (6th Cir. 1939), in support of its in rem argument.  These cases are easily distinguishable in that there is no indication that the Brau consent decree purported to confer in rem jurisdiction.  The consent decree plainly limits its reach to the defendants' "successors, assigns, affiliates, agents, representatives, heirs, administrators, executors, family members, and any person dealing directly or indirectly through them or in concert with them."  Consent Decree 3–4 (J.A. 60-61).  In light of the plain language in the consent decree, the district court certainly did not abuse its discretion in refusing to exercise in rem jurisdiction.

III

In sum both claims fail on knowledge, as Adcor had too much to prevent accrual of the trade secrets claim, while Bevcorp had too little to be held in contempt of the consent decree.  We affirm the judgment of the district court.

No. 06-4260
*Adcor Industries v. Bevcorp, LLC, et al.*

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

I dissent from Parts II A and B because I believe that genuine issues of material fact preclude an award of summary judgment based on timeliness grounds.

Adcor has successfully challenged each piece of evidence on which the district court relied in granting summary judgment. Adcor has presented affirmative evidence from which a reasonable fact-finder could determine that defendants' witness Gordon was biased and incredible; hence, the district court erred in relying on his testimony as undisputed evidence. Darby's knowledge of an unsubstantiated rumor does not establish facts that would lead a fair and prudent person, using ordinary care and thoughtfulness, to make further inquiry under the facts presented here. When Reiss's several inconsistent depositions are considered and examined in a light most favorable to Adcor, it appears that Reiss did not believe that Bevcorp possessed the Crown drawings in the critical time before September 1999. Finally, when Goodell's nonconflicting affidavit is considered, Goodell does not support the idea that Crown earlier contemplated suing Bevcorp for misappropriation.

Based on all of these limitations of defendants' evidentiary support, I believe that there is a genuine issue of material fact as to when Adcor should have been on notice as to the possibility that the Connelly defendants misappropriated the Crown drawings. Thus, I would hold that defendants are not entitled to summary judgment on the statute-of-limitations issue. I respectfully dissent.