THE STATE, EX REL. JACOBS, APPELLANT, *v.* PRUDOFF, APPELLEE.

(No. 3892—Decided January 29, 1986.)

*Thomas L. McGinnis,* for appellant.
*Myron Harkacz,* law director, for appellee.

GEORGE, P.J. Relator-appellant, Leslie W. Jacobs, brought this action in mandamus under Ohio's Open Records Act, R.C. 149.43, seeking disclosure of certain documents submitted to the city of Lorain with an application for a community development loan. He now appeals the trial court's denial of his motion for judgment and the granting of judgment in favor of the city. This court reverses and remands the cause to the trial court for further consideration.

The city of Lorain, through its community development department, granted a $200,000 loan to Food Industry Equipment International, Inc. ("FIE"), Timothy J. McCullough, president, and Bonnie L. McCullough. Upon Jacobs' written request for access to all documents with respect to the loan, the city's legal department determined that fifteen of the items were confidential and should not be released. Those items were identified as: Item 24 — Application of FIE for loan; Item 25 — Financial information of FIE; Item 26 — Application form; Item 29 — Resume of Timothy J. McCullouth; Item 30 — Personal financial statement of Timothy J. McCullough; Items 31, 32, 33 and 34 — Financial statements of FIE; Item 35 — Statement of income of FIE; Item 36 — Capital requirements program for FIE; Item 37 — List of accounts payable and receivable for FIE; Item 38 — Schedule of FIE mortgages and loans; Item 39 — Ratio worksheet; and Item 40 — Income statement. In an affidavit submitted by the city in response to Jacobs' motion for summary judgment, Timothy J. McCullough stated that these items contained confidential financial and business planning information about FIE and were not intended to become a matter of general public knowledge.

The trial court denied Jacobs' motion for summary judgment and rendered judgment for respondent-appellee, Sandford A. Prudoff, Director of the Lorain Department of Community Development.

It should be noted at the outset that the trial court erred in awarding summary judgment to the non-moving party. *Marshall* v. *Aaron* (1984), 15 Ohio St. 3d 48, 15 OBR 145, 472 N.E. 2d 335. Civ. R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party. Since the city did not move for summary judgment on behalf of its director of community development, and since the trial court, nevertheless, erroneously awarded it summary judgment, the cause is remanded for further proceedings. In the interest of judicial economy, this court will discuss the three assignments of error Jacobs raises in his appeal.

Assignments of Error

I. "The court of common pleas erred in denying relator-appellant's motion for summary judgment by ruling that the records in question were not public records pursuant to Section 149.43 of the Ohio Revised Code."

II. "The court erred in denying relator-appellant's motion for summary judgment by ruling that the records in question were prohibited by state statutes from being disclosed where the state statutes did not apply."

III. "The court erred in denying relator-appellant's motion for summary judgment by ruling that public policy prohibits the disclosure of the records in question."

R.C. 149.43 provided (see 140 Ohio Laws, Part I, 1791, 1792-1793) in pertinent part:

"(A) As used in this section:

"(1) 'Public record' means any record that is *required*[1] *to be kept by any governmental unit,* including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

"* * *

"(B) All public records shall be promptly prepared and made available to any member of the general public at all reasonable times for inspection. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time.* * *" (Emphasis added.)

The trial court concluded the documents in question were not public records under the statute because the city community development director was not required to "maintain" the records, even though the information was necessary for him to make a determination as to the loan. This court disagrees.

The Supreme Court has construed the language of the statute in *Dayton Newspapers* v. *Dayton* (1976), 45 Ohio St. 2d 107, 108-109, 74 O.O. 2d 209, 210, 341 N.E. 2d 576, 577, to mean:

"* * * [A]ny record which but for its keeping the governmental unit could not carry out its duties and responsibilities; that the *raison d'etre* of such record is to assure the proper functioning of the unit.* * *"

There does not have to be a specific statutory provision requiring the governmental unit to keep such information or documents. *Police & Fire Retirees of Ohio, Inc.* v. *Police & Fireman's Disability & Pension Fund* (1985), 18 Ohio St. 3d 231, 18 OBR 289, 480 N.E. 2d 482.

Here the trial court attempted to distinguish between the need for the information (in order to make a decision on whether or not to grant the loan) and retention of that information after the decision had been made and the loan granted. Former R.C. 149.40 (see 131 Ohio Laws 176) defined "record" as:

"Any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office, is a record within the meaning of section 149.31 to 149.44, inclusive, of the Revised Code."

The city does not deny that the items in question here were received by the city's community development de-

---

[1] The word "required" was subsequently deleted, see Am. Sub. H.B. No. 238, eff. July 1, 1985, 141 Ohio Laws ____.

partment and utilized in making the decision to grant the loan. Those items now serve to document that decision of the department. Thus, it is clear that their retention continues to assure functioning of the governmental unit and they accordingly may be reasonably classified as "public records" under R.C. 149.43. See *State, ex rel. Mothers Against Drunk Drivers*, v. *Gosser* (1985), 20 Ohio St. 3d 30, 20 OBR 279, 485 N.E. 2d 706.

The trial court and the city of Lorain cite *Dayton* also for the premise that a governmental unit need not release its "work products," but only the name of the company or individual receiving the loan. This court can find no support for this argument in *Dayton*. Rather, *Dayton* stands for the premise that anything a governmental unit utilizes to carry out its duties and responsibilities is a public record under R.C. 149.43.

A finding that a particular document is a "public record" does not, however, complete the analysis. The code contains specific exceptions to the disclosure mandate. The only exception potentially applicable here is the exception for "records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1).

The trial court found the documents to be exempted from disclosure by R.C. 122.36 and 166.05(E). R.C. 122.36 provides:

"Any materials or data submitted, made, or received by the director of development, the industrial technology and enterprise advisory board, and the controlling board, to the extent that the material or data consists of trade secrets, commercial or financial information regarding projects *is not deemed to be public information or public documents and shall not be open to public inspection.*" (Emphasis added.)

R.C. 166.05(E) provides:

"Financial statements and other data submitted to the director of development, the development financing advisory board, or the controlling board by any private sector person in connection with financial assistance under this chapter, or any information taken from such statements or data for any purpose, *shall not be open to public inspection.* * * *"" (Emphasis added.)

R.C. Chapter 122 establishes the Ohio Department of Development to assist in the retention, development, or expansion of industrial and commercial facilities in the state. R.C. Chapter 166 establishes the Ohio Economic Development Program to assist in and facilitate the economic revitalization of the state. Both chapters allow the Ohio Director of Development and various state boards and commissions under his direction to disburse funds, including federal grants, to local governmental subdivisions to achieve certain developmental goals. Before any funds are so disbursed, however, application must be made to the appropriate state program and approved by the appropriate state boards and the Ohio Director of Development.

The funds in question here were community development block grants ("CDBG") authorized by Title I of the Housing and Community Development Act of 1974, as amended (Section 5301 *et seq.*, Title 42, U.S. Code). The trial court found the authority for receipt and disbursement of these CDBG funds in R.C. Chapters 122 and 166. Guidelines and procedures enumerated in these chapters, the trial court concluded, apply to the local community development departments "by virtue of the fact that CDBG funds are disbursed to the state," which in turn disburses them to local units.

There is nothing in the record, however, to indicate that any application ever went to any state board or to the Ohio Director of Development. All documents filed with the court refer simply to an application filed by FIE with the Lorain Department of Com-

munity Development. Further, federal guidelines and procedures for disbursement of these CDBG funds as set forth in Part 570, Title 24, C.F.R., may be read to support Jacobs' argument that federal funds were disbursed directly to the Lorain department and not to the state. If this be the case, neither R.C. 122.36 nor 166.05(E) may be invoked to protect these documents from disclosure, since the state was not involved in the transaction.

The city argues the documents are excepted from disclosure under Ohio's Trade Secrets Act, R.C. 1333.51. The Act reads, in pertinent part:

"(A) As used in this section:
"* * *

"(3) 'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, or improvement, or *any business plans, financial information,* or listing of names, addresses, or telephone numbers, *which has not been published or disseminated, or otherwise become a matter of general public knowledge.* Such scientific or technical information, design, process, procedure, formula, or improvement, or any business plans, financial information, or listing of names, addresses, or telephone numbers *is presumed to be secret when the owner thereof takes measures designed to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner to have access thereto for limited purposes.*
"* * *

"(C) No person, having obtained possession of an article representing a trade secret or access thereto with the owner's consent, shall convert such article to his own use or that of another person, or thereafter without the owner's consent make or cause to be made a copy of such article, or exhibit such article to another." (Emphasis added.)

If, on remand, the trial court deter-

mines the federal funds were disbursed directly to the Lorain Department of Community Development and no application was ever submitted to the state, it will be necessary to consider the city's argument that the documents are excepted from disclosure under R.C. 1333.51. Although trade secrets are generally thought of as scientific or technical designs, processes, procedures or formulas, the state legislature has specifically included within the statutory definition the terms "business plans" and "financial information." Clearly, the legislature intended to protect certain commercial and financial information under this Act.

The issue of whether particular information is a trade secret under R.C. 1333.51 is a factual determination for the trial court. *Water Management, Inc.* v. *Stayanchi* (1984), 15 Ohio St. 3d 83, 15 OBR 186, 472 N.E. 2d 715. The particular documents in question must be scrutinized according to the standards set forth in the statute.

Jacobs argues the trial court erred in finding public policy favors protecting this type of information from disclosure. This court cannot agree. There is considerable support for concluding that business and financial information submitted to a city department of community development under these circumstances should not be open to public inspection.

As noted earlier, the state legislature has explicitly exempted this type of information from public disclosure when it is submitted to the state under R.C. Chapters 122 and 166 in connection with applications for funding through state development programs. The state legislature also spoke clearly in R.C. 121.22(E), when it exempted various state boards from the open meetings requirement when certain financial information, received in confidence, was being discussed.

Furthermore, the Federal Freedom of Information Act (Section 552, Title 5,

94

U.S. Code) includes the following exception to a general rule of disclosure for all information submitted to federal agencies:

"(b) This section does not apply to matters that are —

"* * *

"(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]"

Congress' intent in including this exception in the Freedom of Information Act was discussed at length in *Natl. Parks & Conservation Assn. v. Morton* (C.A.D.C. 1974), 498 F. 2d 765. The court cited testimony of various government agency representatives, as well as national organization spokesmen, to show that Congress was well aware of the problems which could arise from disclosure to competitors of private business data and trade secrets confided to the government. A representative of the Department of Justice is quoted as telling a subcommittee in a hearing on the bill that:

"['] * * * not only as a matter of fairness, but as a matter of right, and as a matter basic to our free enterprise system, private business information should be afforded appropriate protection, at least from competitors.[']" (Footnote omitted.) *Id.* at 769.

The court noted that the report on the bill included the following explanation:

"['] Specifically [the exemption] would include any commercial, technical, and financial data, submitted by an applicant or a borrower to a lending agency in connection with any loan application or loan. S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965).* * *[']" *Id.* at 769-770.

If this type of information would be excepted from disclosure where the loan application was submitted either to a federal agency or to a state agency, it would be anomalous to find the information subject to disclosure simply because the agency which processed the application happened to be a city department. A city concerned with attracting the best possible candidates for its community development projects must be able to promise confidentiality for financial information and business plans, disclosure of which could be harmful to the applicant.

In light of the above, this court reverses the judgment of the trial court and remands the cause for action consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MAHONEY and QUILLIN, JJ., concur.