THE STATE, EX REL. MAZZARO, APPELLEE, *v.* FERGUSON, AUDITOR, APPELLANT.

[Cite as State, ex rel. Mazzaro, *v.* Ferguson (1990), 49 Ohio St. 3d 37.]

(Nos. 89-508 and 89-787—Submitted November 14, 1989—
Decided February 14, 1990.)

*Sweet, Caywood & Winfield* and *Barry L. Sweet,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Catherine M. Cola,* for appellant.

*Squire, Sanders & Dempsey, Kim L. Swanson, David W. Alexander* and *Steven A. Martin,* urging reversal for *amicus curiae* Ohio Society of Certified Public Accountants in case No. 89-508.

*Per Curiam.* This appeal raises three questions for our review: (1) Did the court of appeals err in deciding that R.C. 149.43(B) required the Auditor to produce for inspection the Euclid audit records he had access to, but did not actually possess? (2) Did the court of appeals err in making any decision, because factual issues material to it remain in dispute? (3) Did the court of appeals abuse its discretion in awarding attorney fees?

For the following reasons, we hold that R.C. 149.43(B) requires the Auditor to produce the pertinent records, and further, that the court of appeals had a sufficient basis for so holding. Beyond this, we are not persuaded that the attorney fees award was an abuse of the appellate court's discretion. Accordingly, we affirm.

R.C. 117.11(A) provides that the Auditor of State "shall commence an audit of each public office not more than two years from the release date of the last audit report of such public office." However, if the Auditor is "unable" to complete the biennial audit, R.C. 117.11(B)(1) requires the Auditor to notify the public office, which "may" then engage the services of an independent certified public accountant ("ICPA"). Euclid elected to engage Deloitte as its ICPA because the Auditor could not perform the audit on time.

Nevertheless, the Auditor remained ultimately responsible for the Euclid audit's completion under R.C. 117.11(A). Thus, the agreement between Euclid and Deloitte notwithstanding, the Auditor was required by R.C. 117.11(B)(3) to approve the audit, and, under R.C. 117.12, the audit had to be conducted according to the Auditor's standards, procedures, and guidelines. Moreover, while R.C. 117.21 provided for Deloitte to keep all the work papers, documents, and materials prepared during the course of the audit, it also required Deloitte to make these accessible to the Auditor over the succeeding three years.

R.C. 149.43(B) requires a governmental unit to promptly prepare and allow inspection of all public records, and to provide copies at cost within a reasonable time. With some exceptions, R.C. 149.43(A)(1) defines a "public record" as any record kept by a public office. Under R.C. 149.011(G), a public office's "records" include:

"[A]ny document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public

office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

In support of his claim that he is not under the duty found below, the Auditor first argues that he did not create or receive the audit records that are in Deloitte's possession. He next argues that these records would be under his jurisdiction only if Deloitte had acted in the Euclid audit as his agent, and that he did not exercise enough control over Deloitte's performance to establish an agency relationship. Characterizing his role as that of a "consultant," the Auditor concludes that, while the records are public, his office is not the governmental unit that is responsible for them or that can be compelled to produce them.[2]

We disagree with the latter argument for two reasons. First, we believe that R.C. 149.011(G) is broad enough to encompass "anything a governmental unit utilizes to carry out its duties and responsibilities * * *." *State, ex rel. Jacobs,* v. *Prudhoff* (1986), 30 Ohio App. 3d 89, 92, 30 OBR 187, 190, 506 N.E. 2d 927, 930. Here, the Auditor either did or could have used Deloitte's records in furtherance of its responsibility to complete the Euclid biennial audit. Thus, we hold that the records are within the Auditor's jurisdiction and that he is subject to a writ of mandamus ordering him to make them available for inspection.

Second, although *amicus curiae,* the Ohio Society of Certified Public Accountants, and Mazzaro also argue that an agency relationship is necessary for us to find these records within the Auditor's jurisdiction, we are not

so convinced. Rather, we believe, as did the court of appeals, that the operative inquiry is whether Deloitte prepared the relevant records by reason of authority delegated by the Auditor. See, *e.g., San Gabriel Tribune* v. *Superior Court of Los Angeles Cty.* (1983), 143 Cal. App. 3d 762, 775, 192 Cal. Rptr. 415, 422. Thus, we hold that where (1) a private entity prepares records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose, a relator in an R.C. 149.43(C) mandamus action is entitled to relief regardless of whether he also shows that the private entity is acting as the public office's agent.

We come to these conclusions because they are consistent with R.C. 149.43(C), which allows a mandamus action against *either* the governmental unit *or* the person responsible for a public record. In our view, the disjunctive used in R.C. 149.43(C) manifests an intent to afford access to public records, even when a private entity is responsible for the records. See *State, ex rel. Mothers Against Drunk Drivers,* v. *Gosser* (1985), 20 Ohio St. 3d 30, 33, 20 OBR 279, 282, 485 N.E. 2d 706, 710 (a person is "responsible" for public records when charged by statute to oversee the records). Indeed, in *State, ex rel. Recodat Co.,* v. *Buchanan* (1989), 46 Ohio St. 3d 163, 165, 546 N.E. 2d 203, 205, we expressed our concern that the public not be required to deal with third parties in order to gain access to public records.

Our conclusions also result from the broad construction of the definition of "public records" that our earlier

---

[2] To this end, the Auditor suggests that we follow *Barton* v. *Shupe* (1988), 37 Ohio St. 3d 308, 525 N.E. 2d 812, and join the city of Euclid as a party, *sua sponte.*

decisions require. See, *e.g., State, ex rel. Cincinnati Post,* v. *Schweikert* (1988), 38 Ohio St. 3d 170, 173, 527 N.E. 2d 1230, 1232, and *Dayton Newspapers* v. *Dayton* (1976), 45 Ohio St. 2d 107, 110, 74 O.O. 2d 209, 211, 341 N.E. 2d 576, 578. Moreover, by construing R.C. 149.011(G) to include any material on which a public office could or did rely, our decision preserves the public's right of access to public records, regardless of where they are physically located, or in whose possession they may be.

R.C. 4701.19, however, makes all statements, records, schedules, working papers, and memoranda incident to an audit the property of the certified public accountant who performed the audit. Thus, although the Auditor must be afforded access to these materials under R.C. 117.21, R.C. 4701.19 establishes that they belong to the ICPA performing the audit of a public office. *Amicus* argues that this property interest prevents us from holding such incidental materials also accessible to the public per R.C. 149.43(B).

Here again we disagree. Records owned or possessed by private entities, like those belonging to public offices, are subject to statutory disclosure requirements. R.C. 117.21 exemplifies one type of disclosure requirement—that an ICPA disclose the papers underlying an audit to the Auditor. It applies even though those papers belong to the ICPA. Similarly, R.C. 149.43(B) requires the disclosure of public records and also applies despite any ownership interest. Thus, in *Recodat, supra,* we granted a writ of mandamus ordering a county auditor to produce copies of public records, even though the physical records themselves were in the possession of a private entity.

Accordingly, we hold that when a private entity carries out the duties or responsibilities of a public office and the public office has a right of access to records documenting this, the records are within the public office's jurisdiction and the public office must make them available for public inspection per R.C. 149.43(B). We therefore find that the Auditor had a duty to produce for inspection all the records Mazzaro asked to see.

The next issue before us is whether the record before the court of appeals permitted it to find that the Auditor had this duty. The Auditor argues that the record was insufficient because the appellate court failed to formally take evidence and material facts are still in dispute. He relies principally on *State, ex rel. Temke,* v. *Outcalt* (1977), 49 Ohio St. 2d 189, 3 O.O. 3d 248, 360 N.E. 2d 701.

In *Temke,* we reversed a court of appeals judgment granting a writ of mandamus because the court had rendered its decision before an answer admitting or denying the material facts had been filed. We explained that a peremptory writ of mandamus can issue in the first instance "only when material facts are admitted disclosing that relator is entitled to relief as a matter of law and fact," and further, that a right to relief is unclear when "the facts underpinning the claimed right are not admitted and it has not been established that no valid excuse can be given for nonperformance of the alleged duty." *Id.* at 191, 3 O.O. 3d at 249, 360 N.E. 2d at 702. See, also, R.C. 2731.06.

As Mazzaro points out, however, this case differs from *Temke* because the court of appeals did not make its decision before the Auditor answered. Moreover, the Auditor's answer admitted that Mazzaro requested to see the pertinent records and, in light of the Auditor's concession that the records are public, we consider this the

only factual finding necessary for determining that the Auditor had a duty to produce them notwithstanding Deloitte's ownership interest. Furthermore, since the court of appeals granted an alternative writ some seven months before allowing the peremptory writ of mandamus, the Auditor had ample opportunity to demonstrate a valid excuse for not performing this duty. As the Auditor offered no such excuse, the appellate court did not err by issuing the order it did.

We turn now to the question of attorney fees. The Auditor contends that the appellate court should have denied fees because no public benefit justifying the award will result from this action, and because his response to Mazzaro's public record request was reasonable and made in good faith. Mazzaro maintains that the public will benefit from his efforts because he will institute a taxpayer suit if his inspection reveals the possibility of unlawful conduct by Euclid officials. He further asserts nine reasons for finding that the Auditor acted in bad faith, including the claim that after Mazzaro made his request, the Auditor submitted a retaliatory report about him to the Ohio Ethics Commission.

Attorney fees may be awarded in R.C. 149.43(C) mandamus cases when the relator demonstrates a sufficient public benefit to warrant them. *State, ex rel. Fox,* v. *Cuyahoga Cty. Hosp. System* (1988), 39 Ohio St. 3d 108, 529 N.E. 2d 443. In making an award, a court may also consider the reasonableness of the respondent's refusal to comply with the relator's public record request and whether the respondent acted in good faith. *Id.* at 112, 529 N.E. 2d at 447. Thus, while *Fox* allows a court to rely on a respondent's reasonableness and good faith in denying attorney fees, it permits the award solely on a showing of public benefit.

On appeal of a decision granting or denying fees, we are to review whether the court's result was "unreasonable, arbitrary, or unconscionable." *State, ex rel. Beacon Journal Publishing Co.,* v. *Akron Metro. Hous. Auth.* (1989), 42 Ohio St. 3d 1, 2, 535 N.E. 2d 1366, 1367. The court of appeals did not explain its rationale for granting Mazzaro attorney fees. However, we assume that the court considered all the factors stated in *Fox, supra,* because the parties argued them at the hearing on Mazzaro's motion. We conclude that the record at least supports the finding that the public benefit is served. Therefore, we cannot conclude that the appellate court abused its discretion in awarding attorney fees.

Accordingly, the court of appeals' judgments granting a writ of mandamus and awarding attorney fees are affirmed.

*Judgments affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

H. BROWN, J., concurs in judgment only.

DOUGLAS, J., concurring. I concur in the majority's well-reasoned opinion, affirming the judgment of the court of appeals, regarding the duty of appellant-Auditor to produce for inspection the records sought by appellee.

I also concur in the judgment of the majority in affirming the judgment of the court of appeals regarding the awarding of attorney fees. I write separately only to once again express my concern that the majority's discussion seems to indicate that such awards must be based upon some

nebulous theory of "public benefit," "creation of a fund," "lack of reasonableness" and/or "good faith, bad faith." The majority does this by citing *State, ex rel. Fox,* v. *Cuyahoga Cty. Hosp. System* (1988), 39 Ohio St. 3d 108, 529 N.E. 2d 443. In *Fox,* the majority likened a mandamus action pursuant to R.C. 149.43 to that of a taxpayer's suit brought pursuant to R.C. 733.61. Obviously, without any more discussion needed, these are different types of actions, the language of each statute differs from the other, and the remedies mandated are not related.

The language of R.C. 149.43(C) is unambiguous and explicit. It should not be ignored or rationalized away by setting up "tests," which are not contained in the statute, for its implementation. In a welcome respite from some of our recent decisions on this subject, the majority, in the case before us, reaches the right conclusion in affirming the award of attorney fees to appellee. The message is clear. It should go forth without restraint.