[Cite as *State ex rel. Ames v. Crestwood Local School Dist. Bd. of Edn.*, 2023-Ohio-4371.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel. BRIAN M. AMES, | CASE NO. 2023-P-0014 |
| Relator, | Original Action for Writ of Mandamus |
| - vs - | |
| CRESTWOOD LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | |
| Respondents. | |

# O P I N I O N

Decided: December 4, 2023
Judgment: Petition denied

*Brian M. Ames*, pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Relator).

*Eric J. Johnson*, *Sara Ravas Cooper*, and *Peter T. Zawadski*, Weston Hurd LLP, 1300 East Ninth Street, Suite 1400, Cleveland, OH 44114 (For Respondents).

MARY JANE TRAPP, J.

{¶1}   Relator, Brian M. Ames ("Mr. Ames"), pro se, filed a verified petition for a writ of mandamus against respondents, Crestwood Local School District Board of Education ("the school board") and Kathryn C. Hoffmeister ("Ms. Hoffmeister") in her official capacity as Treasurer (collectively, "respondents").  Mr. Ames seeks an order directing respondents to provide copies of alleged public records he requested, to wit: the results of a mental health survey the athletic director issued to school district staff. The parties filed cross-motions for summary judgment.

{¶2} Upon a careful review of the record and pertinent law, we find there are no genuine issues of material fact and respondents are entitled to judgment as a matter of law. The requested mental health survey results do not constitute "records" under R.C. 149.011(G) subject to disclosure as "public records" under R.C. 149.43. Thus, we grant respondents' motion for summary judgment and overrule Mr. Ames' motion for summary judgment. Mr. Ames' petition for a writ of mandamus is denied.

### Substantive and Procedural History

{¶3} Mr. Ames is a resident of Randolph Township in Portage County, Ohio. The school board is the board of education for the Crestwood Local School District ("the school district") established pursuant to R.C. 3313.01. Ms. Hoffmeister is the school district's treasurer.

{¶4} In the spring of 2022, the school district's athletic director issued a survey entitled "Mental Health PD Survey" to school district staff via Google Forms. The introductory section of the survey states:

{¶5} "This survey is to establish a baseline for how well Crestwood Local Schools is doing with recognizing, acknowledging, and implementing strategies to address Mental Health-Wellbeing/Burnout Feeling[.]

{¶6} "With this data, Crestwood Local Schools intends to recognize areas of concern & improvement, acknowledge individuals [sic] anonymous statements and/or opinions, and to implement strategies that can be utilized by both staff and students to reduce the feeling of 'burnout' and increase Mental Health-Wellbeing[.]

{¶7} "**Your Personal responses and accounts will be anonymous. This Forum does not collect email address or names.**"

2

{¶8}   The survey requested responses to the following eight inquiries:  (1) "Mental Health-Wellbeing means what to you?"; (2) "Rate your current Mental Health-Wellbeing"; (3) "Are you willing to improve your Mental Health-Wellbeing and utilize resources?"; (4) "Is your rating from the previous question influenced by your personal/home life?"; (5) "AT WORK, what NEGATIVELY influences your mental health-wellbeing?"; (6) "Of the selection(s) made for the previous question, please provide a brief explanation as to why it is a negative influencing factor"; (7) "What are you doing now to POSITIVELY influence your mental hea[l]th-wellbeing"; and (8) "If you could suggest/implement one (1) idea/action to improve the Mental Health-Wellbeing/Burnout Feeling, what would it be?"

{¶9}   According to Karen Schulz ("Ms. Schulz"), the school board president, the school board did not "authorize, direct, or otherwise approve" the survey's "administration or dissemination."   According to David Toth ("Dr. Toth"), the school district's superintendent, although the school board did not "authorize or otherwise approve" the survey, he allowed it to be issued.

{¶10}   There were 60 responses to the survey out of 210 total school district employees.  Ms. Hoffmeister has averred that "due to the low number of respondents, the Survey results do not accurately represent the staff population."  Therefore, she did not "use or otherwise rely upon the Survey results to make a decision or to take any action on behalf of the District."   She is also "not aware of any District board member, administrator, employee, agent or representative directly or indirectly using the results of the Survey for any reason."

{¶11}   Dr. Toth has averred that "[a]fter receiving the Survey results, no decision was made and no action was taken, or not taken, based on the Survey results by any

3

District board member, administrator, employee, agent, or representative either directly or indirectly."

{¶12} Ms. Schulz has averred that the school board "has not discussed or deliberated over the Survey results in a Board session" and "has not relied on the Survey results either directly or indirectly to make any Board decision."

{¶13} On April 3, 2023, Mr. Ames submitted, via email, a public records request to Ms. Hoffmeister requesting copies of records "documenting the results of the public health survey conducted using the attached form." The next day, on April 4, 2023, Ms. Hoffmeister responded to Mr. Ames' request via email, attaching a letter signed by herself. She wrote that the survey results do not constitute "public records" under R.C. 149.43(A)(1) and 149.011(G). Specifically, "the survey results you requested are personal to the individual responding to the survey and were not relied upon by the Board in taking any action; therefore, they 'reveal little or nothing' to the District's own conduct and do not document the organization, functions, policies, decisions, procedures, operations, or other activities of the District."

{¶14} The next day, on April 5, 2023, Mr. Ames filed a verified petition for a writ of mandamus against respondents in this court, alleging they failed to comply with their legal duty to provide public records pursuant to R.C. 149.43(B)(1). He requested a peremptory writ directing respondents to provide copies of the survey results as well as statutory damages, attorney fees, and costs. This court issued an alternative writ.

{¶15} Respondents appeared through counsel and filed an answer and a motion for summary judgment. In support of their motion, respondents submitted affidavits from Dr. Toth, Ms. Schulz, and Ms. Hoffmeister. Mr. Ames filed a brief in opposition and a

4

Case No. 2023-P-0014

cross-motion for summary judgment. Respondents filed a brief in opposition, and both sides filed reply briefs.

{¶16} Mr. Ames filed a motion for an in camera inspection of the survey results, and respondents filed a response. We granted Mr. Ames' motion, and respondents filed the survey results with this court under seal.

### Summary Judgment Standard

{¶17} Civ.R. 56(C) provides that before summary judgment is granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 734, 654 N.E.2d 1258 (1995).

{¶18} In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which demonstrate no genuine issue of material fact exists and the moving party is entitled to judgment in its favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the moving party satisfies this burden, the nonmoving party has a reciprocal burden to set forth specific facts demonstrating the existence of a genuine issue of material fact. *Id.* If the nonmovant fails to do so, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

5

**Writ of Mandamus Standard**

{¶19} "Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. "'The function of mandamus is to compel the performance of a present existing duty as to which there is a default.'" *State ex rel. Willis v. Sheboy*, 6 Ohio St.3d 167, 168, 451 N.E.2d 1200 (1983), quoting *State ex rel. Fed. Homes Properties, Inc. v. Singer*, 9 Ohio St.2d 95, 96, 223 N.E.2d 824 (1967).

{¶20} Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 11. To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gadell-Newton v. Husted*, 153 Ohio St.3d 225, 2018-Ohio-1854, 103 N.E.3d 809, ¶ 6. Relators in public-records mandamus cases, however, do not need to establish the lack of an adequate remedy at law. *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.

**The Public Records Act**

{¶21} The Ohio Public Records Act provides that upon request, "all *public records* responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours." (Emphasis

added.)  R.C. 149.43(B)(1).  At issue is whether the mental health survey results constitute "public records" subject to disclosure.

{¶22} "'Public record' means *records* kept by any public office, including, but not limited to, state, county, city, village, township, and school district units * * *."  (Emphasis added.)  R.C. 149.43(A)(1).  "'Records' includes [1] any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, [2] created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, [3] which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."  R.C. 149.011(G).

{¶23} The Supreme Court of Ohio's precedent indicates not all documents involving a public office qualify as "records" subject to disclosure as "public records."  For instance, in *State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 697 N.E.2d 640 (1998), a newspaper sought a writ of mandamus to compel a common pleas court judge to disclose unsolicited letters she had received from members of the public who were attempting to influence her sentencing decision in a criminal case.  *See id.* at 61-62.  The Supreme Court held the letters were not "records" for purposes of R.C. 149.011(G) and 149.43.  *Id.* at 63.  The court explained that "[t]he R.C. 149.011(G) definition of 'records' has been construed to encompass "'anything a governmental unit *utilizes* to carry out its duties and responsibilities * * *."'"  (Emphasis added.)  *Id.*, quoting *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990), quoting *State ex rel. Jacobs v. Prudoff*, 30 Ohio App.3d 89, 92, 506 N.E.2d 927 (9th Dist.1986).  Although Judge Whitmore reviewed the letters, "she never *utilized* the letters in her sentencing decision."  (Emphasis added.)  *Id.*  "Therefore, the letters are not subject to

7

disclosure because they do not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of Judge Whitmore's office." *Id.*

{¶24} The court expressly rejected the relators' contention that "a document is a 'record' under R.C. 149.011(G) if the public office '*could* use' the documents to carry out its duties and responsibilities," reasoning as follows:

{¶25} "Just as R.C. 149.43(A)(1) 'does not define a "public record" as any piece of paper on which a public officer writes something,' * * * R.C. 149.43 and 149.011(G) do not define 'public record' as any piece of paper received by a public office that *might* be used by that office. * * * A contrary conclusion would lead to the absurd result that any document received by a public office and retained by that office would be subject to R.C. 149.43 regardless of whether the public office ever used it to perform a public function. The plain language of R.C. 149.011(G), which requires more than mere receipt and possession of a document in order for it to be a record for purposes of R.C. 149.43, prohibits this result." (Emphasis sic.) *Id.* at 64.

{¶26} In *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.*, 82 Ohio St.3d 37, 693 N.E.2d 789 (1998), a corrections officer employed in the county sheriff's department sought a writ of mandamus to compel the department to disclose email in which other corrections officers made racial slurs against her. *See id.* at 38-39. The Supreme Court of Ohio held the requested email did not constitute "records" under R.C. 149.011(G) subject to disclosure as "public records" under R.C. 149.43 because it "does not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the sheriff's department." *Id.* at 41. The court explained, "although the alleged racist e-mail was created by public employees via a public office's

8

e-mail system, it was never *used* to conduct the business of the public office * * *." (Emphasis added.) *Id.* at 42.

{¶27} In *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, a newspaper sought a writ of mandamus to compel a common pleas court judge to disclose, among other items, prospective juror questionnaires completed in connection with a criminal prosecution that inquired into the jurors' medical histories, criminal records, and religious beliefs. *See id.* at ¶ 1-5. The Supreme Court of Ohio held the questionnaire *responses* were not "records" under R.C. 149.011(G) subject to disclosure as "public records" under R.C. 149.43. The court reasoned that "[t]he disclosure of information regarding prospective and impaneled jurors does little to ensure the accountability of government or shed light on the trial court's performance of its statutory duties." *Id.* at ¶ 11. In addition, "the trial court * * * did not *use* the requested information in rendering its decision, but rather collected the questionnaires for the benefit of litigants in selecting an impartial jury * * *." (Emphasis added.) *Id.* at ¶ 12.

{¶28} The court distinguished between "the *responses* to the juror questionnaires and the actual *questions* from which the responses were solicited." (Emphasis sic.) *Id.* at ¶ 13. "Whereas responses to juror questionnaires are completed by individual jurors, the questions that elicit such responses are invariably written or approved by the trial court." (Emphasis sic.) *Id.* Therefore, "such questions serve to document the activities of a public office and thereby satisfy the statutory definition of a 'record' under R.C. 149.011(G)." *Id.* Accordingly, the court held the "questionnaires without responses" were subject to disclosure under the Public Records Act. *Id.*

Case No. 2023-P-0014

**{¶29}** In *State ex rel. Cincinnati Enquirer v. Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680, 938 N.E.2d 347, the Supreme Court of Ohio addressed the question of when applications for the position of superintendent of a public school system became "records" that could be obtained through R.C. 149.43. In that case, applicants submitted their materials to a post office box, and the school district did not retrieve them until a specified date. *Id.* at ¶ 2-3. A newspaper filed a complaint for a writ of mandamus, arguing that the requested records became public records the moment the school district received them in its post office box, regardless of when it opened the box and reviewed them. *Id.* at ¶ 9. The Supreme Court of Ohio rejected this argument, concluding "the [newspaper] was not entitled to the requested records until they were retrieved and *used* by the school district in their job-selection process." (Emphasis added.) *Id.* at ¶ 18.

### Legal Analysis

**{¶30}** "[I]n order to establish that [the mental health survey results] are records for purposes of R.C. 149.011(G) and 149.43," Mr. Ames "must prove that [the survey results] are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the [public office], (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. If Mr. Ames "fails to prove any of these three requirements, [he] will not be entitled to a writ of mandamus to compel access to the requested [survey results] because those records are not subject to disclosure under the Public Records Act." *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 19.

**{¶31}** The mental health survey results satisfy the first and second requirements. Specifically, they are "document[s]" or "electronic record[s]" that were "received by" a "public office." R.C. 149.011(G). However, based on the Supreme Court of Ohio's

10

precedent, the survey results do not meet the third requirement. The evidence submitted on summary judgment indicates the survey results reflect the responses of a small number of individual school district employees stating their personal opinions. The school district made no decisions and took no action based on the survey results. Since the school district did not conduct any business based on the survey results, it did not "utilize[]" the survey results "to carry out its duties and responsibilities," *Mazzaro*, *supra*, at 39. Consequently, the results do not "serve[] to document the organization, functions, policies, decisions, procedures, operations, or other activities of" the school district, R.C. 149.011(G), and disclosure would not ensure the accountability of the school district or shed light on the school district's performance of its statutory duties. *See Bond*, *supra*, at ¶ 11.

{¶32} Mr. Ames' opposition to summary judgment asserts legal arguments that lack merit. For instance, Mr. Ames contends the athletic director made "decisions" and took "actions" in creating the survey, implementing the survey via Google forms, submitting it to school district staff, and compiling the results, while Dr. Toth made a "decision" and took "action" in allowing the survey to be issued.

{¶33} Mr. Ames' assertions may be valid if he were seeking the disclosure of the survey itself. *See Bond* at ¶ 11. However, Mr. Ames did not request the survey, and it appears he is already in possession of it. The survey *results*, by contrast, are distinguishable. *See id.* at ¶ 13.

{¶34} Mr. Ames also contends Ms. Hoffmeister made a "decision" based on the survey results when, because of the low response rate, she "did not, and would not, use or otherwise rely upon the Survey results to make a decision or to take any action on

11

behalf of the District." According to Mr. Ames, this shows "a decision [was made] not to proceed with the [survey's] original-purpose * * * based on seeing the survey result[s]."

{¶35} In support, Mr. Ames cites this court's decision in *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 11th Dist. Portage No. 2016-P-0057, 2017-Ohio-4237. In that case, Mr. Ames sued the Portage County Board of Commissioners for alleged violations of R.C. 121.22, i.e., the Open Meetings Act. *See id.* at ¶ 1-2. Mr. Ames asserted a claim based on R.C. 121.22(F), which provides, "A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, *except in the event of an emergency requiring immediate official action*." R.C. 121.22(F). The board published notice of a "special emergency meeting" on the same date it was held for the stated purposes of meeting with the park district to discuss a hiking/biking trail and conducting budget meetings. *Id.* at ¶ 2. The minutes reflected that the board held discussions and agreed to ask a county official to send correspondence. *See id.* at ¶ 11, ¶ 38.

{¶36} Mr. Ames argued that because the board took no "official action" as a result of the emergency session, there was no emergency to justify giving less than 24 hours' notice. *See id.* at ¶ 36-37. We declined to reach the question of whether the board's activity during the meeting constituted "official action" under R.C. 121.22(F). *Id.* at ¶ 39. Instead, we found no support for Mr. Ames' assertion that "an emergency session is invalid under R.C. 121.22(F) where a public body decides not to take official action at the close of the session." *Id.* We commented that "[t]he decision not to take action is sometimes the best one and certainly not contrary to the purpose and intent of the statute." *Id.*

12

Case No. 2023-P-0014

{¶37} The foregoing case involved a distinguishable setting and a different statute. In addition, the board in that case held a public meeting, discussed public issues, and agreed on at least one course of action. Under the Open Meetings Act, a "'meeting' means any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2). Here, by contrast, Ms. Schulz has averred that the school board "has not discussed or deliberated over the Survey results in a Board session" and "has not relied on the Survey results either directly or indirectly to make any Board decision."

{¶38} Mr. Ames next contends that since the school officials have seen the survey results and cannot "unsee" them, the school district cannot say it has not "used" them.

{¶39} A similar situation was presented in *Whitmore*. Judge Whitmore conceded "she could not 'absolutely * * * wipe [her] mind clean of everything [she] receive[d] outside of the presentence investigation,' including the letters." *Id.* at 62. However, she asserted she "did not rely on any of the letters * * * to make her sentencing decision." *Id.* While the dissent argued Judge Whitmore's review of the letters was legally sufficient, *see id.* at 64-65 (Cook, J., dissenting), the majority rejected this reading of the statute.

{¶40} Here, only Ms. Hoffmeister's affidavit supports an inference that she saw the survey results. Unlike Judge Whitmore's issuance of a sentencing decision in *Whitmore*, the school district in this case did not subsequently implement any policies. Thus, to the extent the school officials *saw* the survey results, it was not equivalent to the school district *using* them to carry out its statutory duties.

{¶41} Finally, Mr. Ames contends that the school district's "promise" to take "beneficial action" in response to the survey results is sufficient. In particular, he notes

13

the survey explicitly stated the school intended to implement strategies based on the identified concerns.

{¶42} As explained, the Supreme Court of Ohio expressly rejected the argument that a document is a "record" under R.C. 149.011(G) if the public office "*could* use" the documents to carry out its public functions. (Emphasis sic.) *Whitmore* at 63. In addition, in *Ronan*, *supra*, the court held that a public office's *solicitation* of documents did not create a dispositive distinction, stating, "Although [relator] attempts to distinguish our holding in *Whitmore* based on the *unsolicited* nature of the letters at issue there as opposed to the information *solicited* by the school district in this case, we do not find this distinction dispositive." (Emphasis added.) *Id.* at ¶ 15.

{¶43} The dissent contends that Mr. Ames is entitled to summary judgment. The dissent's arguments reflect a misapprehension of the applicable law and the evidentiary record.

{¶44} For instance, the dissent contends this court is required to liberally construe the Public Records Act in favor of access and to strictly construe exceptions to disclosure. Contrary to the dissent's assertion, however, this case does not involve an "exception" under the Public Records Act. It involves the meaning of "records," and we are bound by the Supreme Court of Ohio's construction of this statutory term.

{¶45} The dissent erroneously claims the school board "created" and/or "issued" the survey and "collected" the "data" from the district employees. The evidentiary record does not support these assertions. As stated, the school district's athletic director issued the survey, and it is not clear from the record who created the survey or collected the responses. In any event, the second requirement for a "record" is met if the public office *created or received* the document. *See Johnson*, *supra*, at ¶ 19. The school district

14

Case No. 2023-P-0014

concedes it received the survey results. Therefore, in addition to being incorrect, the dissent's assertions do not support a contrary result.

{¶46} The dissent also erroneously claims R.C. 149.011(G) does not require a public office to "utilize or make decisions based on a particular document in order for it to constitute a public record." However, the Supreme Court of Ohio has consistently construed the statute in this manner. While the dissent may believe *Whitmore* and its progeny were wrongly decided, this court has no authority to issue a decision in conflict with Supreme Court decisions that have not been reversed or overruled. *See State v. Haynes*, 11th Dist. Lake No. 2022-L-009, 2022-Ohio-4464, ¶ 39.

{¶47} The dissent then acknowledges *Whitmore*'s holding but claims the fact Judge Whitmore did not "utilize" the letters in that case was only "material" because she neither "created" nor "solicited" them. *Whitmore* says no such thing, and the Supreme Court of Ohio's subsequent precedent holds otherwise. In *Wilson-Simmons*, *supra*, the creation of racist email by public employees via the public office's email system did not render them public records. *See id.* at 42. In *Ronan*, the public office's solicitation of documents did not render them public records. *See id.* ¶ 15.

{¶48} The dissent next contends the survey results "document the *operation* of the district" because "they reflect the negative influence of work on the employees' mental health." (Emphasis added.) The dissent is apparently referencing the contents of the survey results that the respondents filed under seal in this case, which is wholly improper. Further, the dissent's focus on the word "operations" in R.C. 149.011(G) does not meaningfully distinguish this case from the Supreme Court's precedent.

{¶49} Finally, the dissent claims our decision is contrary to the Supreme Court of Ohio's decisions in *Mazzaro*, *supra*; *State ex re. Data Trace Information Servs.*, *L.L.C. v.*

15

Case No. 2023-P-0014

*Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288; and *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297. The dissent fails to articulate how this is purportedly so. A review of those cases demonstrates they are inapposite.

{¶50} In sum, the record and the applicable precedent demonstrate there are no genuine issues of material fact and respondents are entitled to judgment as a matter of law. The requested mental health survey results do not constitute "records" under R.C. 149.011(G) subject to disclosure as "public records" under R.C. 149.43. Our in camera review of the results does not compel a contrary conclusion. Accordingly, Mr. Ames does not have a clear legal right to a writ of mandamus directing respondents to provide the mental health survey results, and respondents do not have a corresponding clear legal duty to provide them.

{¶51} For the foregoing reasons, respondents' motion for summary judgment is granted, and Mr. Ames's motion for summary judgment is overruled. Mr. Ames' petition for a writ of mandamus is denied.

JOHN J. EKLUND, P.J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

_____

MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶52} I respectfully dissent and would grant summary judgment in favor of Relator, Brian M. Ames, and issue a writ of mandamus directing the Respondents to provide him with copies of the requested survey results. These responses from public employees to

16

Case No. 2023-P-0014

a survey issued by a public office for the purpose of addressing the public employees' performance and the public office's handling of the employees' feelings of "burnout" are quintessentially public records. Accordingly, Ames is entitled to the writ of mandamus.

{¶53} When considering a public records request, the Supreme Court of Ohio has consistently affirmed that the courts should "construe the Public Records Act liberally in favor of broad access and resolve any doubts in favor of disclosure of public records." *State ex rel. Sultaana v. Mansfield Corr. Inst.*, __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.3d __, ¶ 21. Conversely, "[e]xceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23.

{¶54} The purpose of the Public Records Act "is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." (Citation omitted.) *State ex rel. Gannett Satellite Information Network, Inc. v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997); *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997) ("[o]ne of the salutary purposes of the Public Records Law is to ensure accountability to those being governed"). "Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so that government officials can be held accountable." *State ex rel. Fair Housing Opportunities of Northwest Ohio v. Ohio Fair Plan*, 2022-Ohio-385, 184 N.E.3d 952, ¶ 48 (10th Dist.).

{¶55} Public Records are defined as "records kept by any public office, including * * * school district units." R.C. 149.43(A)(1). Records are defined to include "any document * * * created or received by * * * any public office of the state * * * which serves

17

to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

{¶56} Ames requested from the Respondents "the records documenting the results of the public health survey" conducted by the Crestwood LSD Board of Education. As noted by the majority, this survey was issued to school district employees "to establish a baseline for how well Crestwood Local Schools is doing with recognizing, acknowledging, and implementing strategies to address Mental Health-Wellbeing/Burnout Feeling. With this data, Crestwood Local Schools intends * * * to implement strategies that can be utilized by both staff and students to reduce the feeling of 'burnout' and increase Mental Health-Wellbeing." Among the questions comprising the survey, employees were asked "AT WORK, what NEGATIVELY influences your mental health-wellbeing" and "why is it a negative influencing factor." Under a plain reading of the Public Records Act, the collection of data by a public office from its own employees relating to their employment for the purpose of adopting "strategies" for use not only by employees but also by students constitutes a public record. Disclosure of the survey results would allow citizens to evaluate the rationale behind the Respondents' decisions so as to ensure accountability.

{¶57} To reiterate, Ames' records request falls squarely within the statutory definition given above: the documents requested were created and received by the Board of Education to document the "mental health-wellbeing" of its employees and how the work environment affects their mental health-wellbeing for the purpose of adopting policies to improve their mental health-wellbeing. The majority concludes, however, that the documents fail to even meet the "threshold" definition of what constitutes a public

18

Case No. 2023-P-0014

record. The majority reaches its conclusion through a misapplication of case law in derogation of the plain and ordinary meaning of the statutory definition.

{¶58} The majority concludes the survey results do not constitute public records because the Board of Education did not "utilize" the survey results, i.e., "made no decisions and took no action based on the survey results." *Supra* at ¶ 33. It cannot be overemphasized that there is no requirement in R.C. 149.011(G) that a public office utilize or make decisions based on a particular document in order for it to constitute a public record. If a record otherwise documents the organization, functions, policies, decisions, procedures, operations, or other activities of a public office, the fact that the record was not utilized to make a decision should not exempt it from being considered a public record.

{¶59} As an initial matter, it can be fairly argued that both the survey and its results were actions taken by the Board of Education. The survey was created by an employee of the district for the purpose of assisting the district in creating policies applicable to both staff and students. The survey was sent to other school district employees who, by responding to the survey, created the survey results. These results were then reviewed by another district employee who concluded that "due to the low number of respondents, the Survey results did not accurately represent the staff population." The responses to the survey document the operation of the district inasmuch as they reflect the negative influence of work on the employees' mental health. There is no reason why these results should not be subject to public scrutiny. Likewise, it was determined that these responses were not representative of the staff population. Again, there is no reason why this decision should not be subject to public scrutiny. *Compare State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 11th Dist. Portage No. 2016-P-0057, 2017-Ohio-4237, ¶ 39 (rejecting the argument that the decision not to take official action during an emergency

19

Case No. 2023-P-0014

session violated the Open Meetings Act: "[t]he decision not to take action is sometimes the best one").

{¶60} The majority relies on *State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 697 N.E.2d 640 (1998), for the proposition that a public entity must utilize a document before it constitutes a public record. In *Whitmore*, a sentencing judge received letters from the public which she read but did not utilize when imposing sentence. The supreme court concluded that, because the judge "never utilized the letters in her sentencing decision," they were "not subject to disclosure because they do not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of Judge Whitmore's office." *Id.* at 63. The majority misinterprets this to mean that unless a document is utilized in making a decision it cannot constitute a public record. That interpretation greatly narrows and restricts the scope of the public records law contrary to the supreme court's intent. The fact that the judge in *Whitmore* did not utilize the letters in making her decision was material only because the letters were neither created nor solicited by the sentencing judge. They did not otherwise fall squarely within the statutory definition of a public record. Interpreting the definition broadly, the court recognized that even such records should be subject to disclosure if duly and appropriately utilized in the operation of the public office.

{¶61} The court in *Whitmore* cited other supreme court case law stating that the definition of a public record in "R.C. 149.011(G) is broad enough to encompass 'anything a governmental unit utilizes to carry out its duties and responsibilities.'" *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990), citing *State ex rel. Jacobs v. Prudoff*, 30 Ohio App.3d 89, 92, 506 N.E.2d 927 (9th Dist.1986); *see also State ex rel. Rea v. Ohio Dept. of Edn.*, 81 Ohio St.3d 527, 530, 692 N.E.2d 596 (1998) ("R.C.

Case No. 2023-P-0014

149.43 has been construed broadly to include 'anything a public office utilizes to carry out its duties and responsibilities'"). Two points should be emphasized here. First, the allowance that **anything** utilized by a public office in carrying out its duties and responsibilities could be considered a public record is consistent with the principle that the records act should be construed liberally in favor of broad access to public records. Second, the utilization of the documents does not have to have been made in connection with a formal decision or act of the public office. The document need only be utilized in carrying out the duties and responsibilities of the public office, such as formulating policies for the health and well-being of staff and students. The majority's emphasis on the failure of the Board of Education to "utilize" the survey results to take affirmative action on behalf of the district is contrary to both points.

{¶62} Under the majority's approach to the public records law, there are broad categories of documents, such as meeting minutes, investigative reports, and internal assessments, that could be excluded from scrutiny merely because they were not used as a basis for taking formal action. Such a strict utility-based approach is not reconcilable with the results of the following cases: *Mazzaro* at 39-40 (documents used in preparation of a municipal audit); *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 28-41 (deeds, mortgages, liens, leases, releases and other documents maintained in the county recorder's office); *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 113 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 23-36 (questionnaires and medical-release authorizations documenting incidents of lead poisoning).

{¶63} Of course, not every "piece of paper" or document created or received by a public employee constitutes a public record. *Whitmore* at 64. Thus, racist emails and

21

information about prospective jurors' medical histories, criminal records, and religious beliefs are not public records primarily because they do not document the operation of a public office (although they could be deemed public records if utilized by a public office in carrying out its duties and responsibilities). *Supra* at ¶ 28-29. The survey results at issue herein are not such incidental documents unrelated to the operation of the school district. They were created by the district and for the purpose of "establish[ing] a baseline for how well Crestwood Local Schools is doing with recognizing, acknowledging, and implementing strategies to address Mental Health-Wellbeing/Burnout Feeling" in order "to implement strategies that can be utilized by both staff and students to reduce the feeling of 'burnout' and increase Mental Health-Wellbeing." Thus, the results already document the operation of the district without any need of further utilization by the district to justify their disclosure.

**{¶64}** For the foregoing reasons, Ames is entitled to judgment on his Petition for Writ of Mandamus. Disclosure of the survey results serves the Public Records Act's goal of holding public offices accountable and is consistent with the liberal construction of the Act mandated by the supreme court. I respectfully dissent.

22

Case No. 2023-P-0014